[No. H037156. Sixth Dist. July 20, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
CRAIG ANDREW WERNER, Defendant and Appellant.

1196

## Counsel

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman and Aileen Bunney, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DUFFY, J.**[*]—Warrantless searches of residences are "presumptively unreasonable" under the Fourth Amendment to the United States Constitution. (*Payton v. New York* (1980) 445 U.S. 573, 586 [63 L.Ed.2d 639, 100 S.Ct. 1371], fn. omitted.) But police performing an in-home arrest may conduct a limited search for their own protection, known as a "protective sweep," under certain circumstances where they have a reasonable suspicion that there may be a dangerous person in the area to be swept. (*Maryland v. Buie* (1990) 494 U.S. 325, 335 [108 L.Ed.2d 276, 110 S.Ct. 1093] (*Buie*).) Whether the court properly applied the protective sweep doctrine in upholding the warrantless search in this instance is at the heart of this case.

After sheriff's deputies arrested and handcuffed defendant Craig Andrew Werner outside his home in the late afternoon following a report of a domestic violence incident occurring early that morning, a deputy accompanied defendant's roommate inside the house while he retrieved defendant's

---

[*]Retired Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

shoes and keys. In the course of doing so, the deputy discovered marijuana and illegal fireworks in plain view in defendant's bedroom. The discovery of this contraband—followed by the deputies' finding of more marijuana, marijuana plants, and indicia of drug sales—resulted in defendant's being charged with three drug felonies.

Defendant moved to suppress seized evidence pursuant to Penal Code section 1538.5.[1] Although the People did not cite *Buie, supra,* 494 U.S. 325, or specifically argue the protective sweep doctrine, they claimed the initial search of defendant's bedroom was justified for officer safety reasons. The court denied the motion to suppress. Defendant then pleaded no contest to the three felonies as well as three misdemeanor offenses. The court suspended sentencing and granted three years' probation.

Defendant challenges the conviction entered on his no contest plea, contending the discovery of the contraband and indicia of marijuana sales was the product of an illegal, warrantless search of his residence. The Attorney General responds that the initial entry into the home that resulted in the discovery of contraband in defendant's bedroom was justified by the protective sweep doctrine and that defendant's roommate consented to later searches of the common areas of the home in which more contraband and evidence of drug sales activity were discovered. We conclude that the protective sweep doctrine did not justify the deputy sheriff's warrantless entry into defendant's home and that the court therefore erred in its denial of the suppression motion. In so holding, we address four distinct aspects of the challenged search, namely, the initial discovery of the marijuana and illegal fireworks in plain view, and the deputies' discovery of additional contraband and indicia of drug sales which followed. We will reverse the order of probation and direct the court to permit defendant to withdraw his no contest plea; if he does so, the court shall then vacate its order on the suppression motion.[2]

---

[1] Further statutory references are to the Penal Code unless otherwise stated.

[2] In his separate petition for habeas corpus that we ordered to be considered with this appeal (*In re Werner* (July 20, 2012, H037976) (petn. den.)), defendant raises factual material outside of the record in this appeal in support of his contention that he did not receive effective assistance of counsel with respect to his motion to suppress evidence. Specifically, he contends in the petition that a search of defendant's garage conducted pursuant to a warrant was unlawful because the affidavit was based upon illegally seized evidence; he claims the record on appeal is inadequate because there is no copy of the affidavit, and that such omission constitutes ineffective assistance of counsel. Since we conclude in the appeal that the probation order must be reversed because the court erred in denying the suppression motion, the issues in the habeas corpus petition are moot. Accordingly, by separate order of this date, we deny the petition for habeas corpus on that basis.

## PROCEDURAL AND FACTUAL BACKGROUND[3]

### I. *The Information*

Defendant was charged by information with three felonies: possession of marijuana for sale (Health & Saf. Code, § 11359); cultivation of marijuana (Health & Saf. Code, § 11358); and possession of a controlled substance, i.e., psilocybin (Health & Saf. Code, § 11377, subd. (a)). Defendant was also charged with misdemeanor possession of dangerous fireworks without a valid permit (Health & Saf. Code, § 12677), battery on a spouse or cohabitant (Pen. Code, §§ 242, 243, subd. (e)), and false imprisonment (§§ 236, 237).

### II. *The Motion to Suppress*

#### A. *Contentions*

Defendant argued in his motion to suppress evidence pursuant to section 1538.5 that Deputy Sheriff Serg Palanov's initial entry into defendant's home while accompanying defendant's roommate, Adam Ingram, as he retrieved defendant's keys and shoes was unlawful. He claimed the warrantless search was not justified for officer safety reasons under the protective sweep doctrine enunciated in *Buie, supra*, 494 U.S. 325. Defendant argued that the evidence discovered in his bedroom as a result of the illegal sweep—a baggie of marijuana on a dresser and a large bag of marijuana and illegal fireworks in the closet—should be suppressed. He also asserted that a subsequent search of the home and backyard by Detective Doug Ulrich was unlawful because it followed Deputy Palanov's illegal search leading to the discovery of marijuana and was based on Deputy Palanov's invitation to " 'come see what I saw.' " Defendant challenged further in the suppression motion the subsequent search pursuant to a warrant of defendant's garage, which yielded approximately 45 marijuana plants with supporting irrigation and ventilation equipment. He asserted that, because the affidavit supporting the warrant included the information discovered from Deputy Palanov's illegal search, the search was unlawful under the " 'fruit of the poisonous tree' " doctrine. (*Wong Sun v. United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 83 S.Ct. 407].)

---

[3] The facts relevant to the challenged search and seizure are taken from the evidentiary hearing on defendant's motion to suppress. "Since the trial court resolved this matter in favor of the prosecution, for purposes of this proceeding we view the record in the light most favorable to the People's position." (*Wilson v. Superior Court* (1983) 34 Cal.3d 777, 780 [195 Cal.Rptr. 671, 670 P.2d 325].)

The People opposed the motion, arguing that Deputy Palanov's warrantless entry into the home was lawful because it was necessitated by officer safety.[4] The People asserted further that the deputies' subsequent search of other areas of the house was lawful because Ingram agreed to it. They also claimed that the later search of the garage was lawful because it was made pursuant to a valid warrant.

## B. *Evidence*

An evidentiary hearing followed in two court sessions concluding on January 18, 2011. The evidence presented at the hearing, consisting of the testimony of three witnesses, follows.[5]

On the afternoon of February 19, 2010, Deputy Palanov and Deputy Luis Orozco with the Santa Clara County Sheriff's Office interviewed a woman in San Jose. She reported that she had been assaulted early that morning by defendant, her boyfriend, at his home in Campbell. The two deputies, along with a third deputy, then went to defendant's residence, arriving about 5:00 p.m. Deputy Orozco knocked on the front door and defendant, who was barefoot, answered it after some delay. Defendant's roommate, Ingram, came outside after defendant was already speaking to Deputy Orozco on the front porch. Defendant was placed in handcuffs by Deputy Orozco. Defendant asked Ingram to retrieve defendant's keys and shoes from his bedroom.

Deputy Palanov testified that he then accompanied Ingram to defendant's bedroom "[f]or officer safety reasons. I didn't know what else might be in the house or what he might retrieve." Before entering the house, Deputy Orozco had checked through "the wants and warrants system" and determined that Ingram was "clear." One of the deputies patsearched Ingram; the search yielded no weapons or suspicious items. Deputy Palanov also asked Ingram whether there was anyone inside the house, and he responded that there was

---

[4] The People in their opposition did not specifically mention the protective sweep doctrine as justification for the search. Nor did they cite *Buie, supra,* 494 U.S. 325, or any other authorities discussing the doctrine. Rather, the People stated conclusorily that the warrantless entry was required "to preserve the safety at the deputies' location" and cited cases addressing the exigent circumstances exception justifying a warrantless entry in instances in which "an emergency situation requires swift action to prevent imminent danger to life. [Citation.]" (*People v. Rogers* (2009) 46 Cal.4th 1136, 1156 [95 Cal.Rptr.3d 652, 209 P.3d 977].) The Attorney General on appeal does not argue this justification for the warrantless search. Under the facts as recited, *post,* such claim, even though forfeited (*People v. Combs* (2004) 34 Cal.4th 821, 845 [22 Cal.Rptr.3d 61, 101 P.3d 1007] [party abandons claim by failing to raise it on appeal]), has no application here.

[5] The testimony of one of the witnesses was presented at the preliminary hearing. By stipulation of the parties, it was made admissible in connection with the suppression hearing.

no one. Immediately before entering, Deputy Palanov was unaware of the existence of any ongoing criminal activity at the house.

Deputy Palanov followed Ingram to defendant's bedroom. The deputy smelled marijuana and saw on top of a dresser a small Ziploc bag partially filled with what he believed to be marijuana. The closet door was ajar, and Deputy Palanov observed "one or two large gallon-sized bags filled with marijuana bud[s]" and numerous fireworks. The deputy also saw a notebook on the dresser; after looking through it, he determined that it had a number of "pay/owe" entries commonly found in drug sales. Deputy Palanov found inside the dresser $968 in cash and a quantity of psilocybin. He instructed Ingram to go outside and he complied. Deputy Palanov remained inside and another officer entered the house.

After going outside, Ingram was instructed not to reenter the house and was told he was being detained. Deputy Orozco asked Ingram for permission to search his room and common areas of the house (including a third bedroom used by both occupants), and he gave that consent. Deputy Palanov searched Ingram's bedroom and the rest of the house. He found a small digital scale commonly used for narcotics in Ingram's bedroom; a plastic bag containing approximately 11 sorting trays containing marijuana residue, and a small marijuana plant in the third bedroom; and two plastic bags with marijuana buds in the kitchen. Deputy Palanov also went into the backyard. He noticed what he believed to be the odor of fresh marijuana coming from a detached garage. Deputy Palanov also heard a slight humming sound that appeared to be coming from the garage. Although he could not see into a portion of the garage because the windows were blacked out, he looked into another part of it and saw industrial fans.

Detective Ulrich, with the assistance of Deputies Orozco and Palanov, obtained a warrant to search defendant's detached garage. Deputy Palanov was involved in executing the search warrant. The search yielded approximately 45 immature marijuana plants, each approximately four feet tall, on three large tables. The garage had been modified in that the windows were taped closed with heavy black plastic and the structure had been divided into two grow rooms. The two rooms had "a high pressure modified lighting system." There were "[s]everal electrical power inverters and electrical timers," and "a hydration system connected to . . . [the] plants."

C. *Order*

After submission of the matter, the court denied the motion to suppress. The minute order did not contain factual findings or reasoning.

### III. *The Plea*

Defendant pleaded no contest to all six counts, conditioned on being granted probation on the felony counts. On June 30, 2011, the court suspended imposition of the sentence on the three felony convictions and placed defendant on probation for three years, conditioned on serving five months in county jail. The court denied probation and imposed a concurrent five-month jail term for the misdemeanor convictions. Defendant filed a timely notice of appeal of the denial of the motion to suppress. The denial of the suppression motion may be challenged by an appeal from the judgment entered after defendant's guilty or no contest plea. (§ 1538.5, subd. (m); *People v. Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706].)

## DISCUSSION

### I. *Standard of Review*

"An appellate court's review of a trial court's ruling on a motion to suppress is governed by well-settled principles. [Citations.] [¶] In ruling on such a motion, the trial court (1) finds the historical facts, (2) selects the applicable rule of law, and (3) applies the latter to the former to determine whether the rule of law as applied to the established facts is or is not violated. [Citations.] 'The [trial] court's resolution of each of these inquiries is, of course, subject to appellate review.' [Citations.] [¶] The court's resolution of the first inquiry, which involves questions of fact, is reviewed under the deferential substantial-evidence standard. [Citations.] Its decision on the second, which is a pure question of law, is scrutinized under the standard of independent review. [Citations.] Finally, its ruling on the third, which is a mixed fact-law question that is however predominantly one of law, . . . is also subject to independent review." (*People v. Williams* (1988) 45 Cal.3d 1268, 1301 [248 Cal.Rptr. 834, 756 P.2d 221], abrogated on another ground as recognized in *People v. Abilez* (2007) 41 Cal.4th 472, 519 [61 Cal.Rptr.3d 526, 161 P.3d 58]; see *People v. Ayala* (2000) 23 Cal.4th 225, 255 [96 Cal.Rptr.2d 682, 1 P.3d 3].) All presumptions favor the trial court's exercise of its power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, " 'and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' " (*People v. Leyba* (1981) 29 Cal.3d 591, 596–597 [174 Cal.Rptr. 867, 629 P.2d 961], quoting *People v. Lawler* (1973) 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621] (*Lawler*).) And where, as is the case here, there is no controversy concerning the underlying facts, our task is simplified: The only issue is whether that rule of law, as applied to the undisputed historical facts, was or was not violated.

This is an issue for our independent review. (See *People v. Thompson* (2006) 38 Cal.4th 811, 818 [43 Cal.Rptr.3d 750, 135 P.3d 3].)

Based upon its factual findings, the trial court has the duty to determine whether "the search was unreasonable within the meaning of the Constitution." (*Lawler, supra,* 9 Cal.3d at p. 160.) California courts measure the reasonableness of the search against federal constitutional standards. (Cal. Const., art. I, § 28, subd. (d); see *People v. Woods* (1999) 21 Cal.4th 668, 674 [88 Cal.Rptr.2d 88, 981 P.2d 1019].)

## II. *Denial of Motion to Suppress*

### A. *Parties' Contentions*

Defendant argues that the court erred in denying his motion to suppress. He contends that the initial warrantless entry by Deputy Palanov into defendant's home was unlawful and could not be justified under *Buie, supra,* 494 U.S. 325 as a valid protective sweep incident to defendant's arrest. He also contends that Deputy Palanov's search of the dresser drawer—yielding $968 in cash and the baggie of psilocybin—and the contents of the notebook (showing the pay/owe entries) were illegal, regardless of the legality of the deputy's initial entry into the home. Because (defendant argues further) Ingram's later consent to the search of his bedroom and other areas of the home was tainted by the prior unconstitutional search of defendant's bedroom, the search based upon that consent was also unlawful. Although defendant claimed below that the later search conducted by the deputies pursuant to a warrant was unlawful because the affidavit was based upon the contraband and information gathered from the earlier warrantless searches, he does not assert that claim in this appeal. He instead notes that because the appellate record does not include the search warrant affidavit, he argues the invalidity of the search pursuant to warrant in a separate habeas corpus petition in which he asserts ineffective assistance of counsel. (See fn. 3, *ante.*)[6]

The Attorney General responds that the entry by Deputy Palanov into the residence was justified for officer safety reasons under the *Buie* protective

---

[6] Defendant also contends that the probation condition requiring him to stay away from places where illegal drugs are used or sold is unconstitutionally vague because it may be potentially violated irrespective of whether he has knowledge that the place is one in which illegal drugs are sold or use. This position appears to have merit. (See *People v. Leon* (2010) 181 Cal.App.4th 943, 949–950 [104 Cal.Rptr.3d 410].) But in light of our holding that the probation order must be reversed because the court erred in denying the suppression motion, it is unnecessary for us to address this additional claim. (See *People v. Uribe* (2008) 162 Cal.App.4th 1457, 1482, fn. 35 [76 Cal.Rptr.3d 829] [appellate court declined to consider other claims of error because it accepted one of appellant's grounds for reversal].)

sweep doctrine. She argues: "[W]hile [Ingram] was not arrested, he wanted to return inside the residence to retrieve [defendant's] property at [defendant's] request. The officers had not cleared the residence and did not know whether there were weapons or other individuals inside which would pose a threat to officer safety." The Attorney General also contends that because the initial entry was proper under the protective sweep doctrine, the "more thorough search of the common areas within the residence" was proper under the valid consent given by Ingram.

## B. *Protective Sweep Doctrine*

■ As our high court has recently explained, " '[T]he "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' [Citation.] Thus, 'searches and seizures inside a home without a warrant are presumptively unreasonable.' [Citation.] 'Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.' [Citation.]" *(People v. Troyer* (2011) 51 Cal.4th 599, 602 [120 Cal.Rptr.3d 770, 246 P.3d 901].) One such exception is the protective sweep.

"The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *(Buie, supra,* 494 U.S. at p. 337.) "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *(Id.* at p. 327.) "A protective sweep . . . occurs as an adjunct to the serious step of taking a person into custody for the purpose of prosecuting him [or her] for a crime" and allows the arresting officers to take "steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *(Id.* at p. 333.)

■ As the California Supreme Court has further explained, "A protective sweep of a house for officer safety as described in *Buie, does not* require probable cause to believe there is someone posing a danger to the officers in the area to be swept. [Citation.] . . . A protective sweep can be justified merely by a *reasonable suspicion* that the area to be swept harbors a dangerous person. [Citation.] Like the limited patdown for weapons authorized by *Terry v. Ohio*[ (1968)] 392 U.S. 1, 21, 27 [20 L.Ed.2d 889, 88 S.Ct.

1868], a protective sweep may not be based on 'a mere "inchoate and unparticularized suspicion or 'hunch . . . .' " ' [Citation.]" (*People v. Celis* (2004) 33 Cal.4th 667, 678 [16 Cal.Rptr.3d 85, 93 P.3d 1027] (*Celis*); see *People v. Troyer, supra,* 51 Cal.4th at pp. 606–607.) The test under *Buie* therefore requires a reasonable suspicion *both* that another person is in the premises *and* that that person is dangerous. (3 LaFave, Search and Seizure (4th ed. 2004) § 6.4(c), p. 377.) The existence of such a reasonable suspicion is evaluated on a case-by-case basis by looking at the " 'totality of the circumstances' " to ascertain whether the police had or whether the officer has "a 'particularized and objective basis' " for his or her suspicion. (*United States v. Arvizu* (2002) 534 U.S. 266, 273 [151 L.Ed.2d 740, 122 S.Ct. 744].)

■ A protective sweep is not limited to situations immediately following an arrest; it may occur in conjunction with a suspect's detention (*Celis, supra,* 33 Cal.4th at p. 679),[7] or a valid probation search (*People v. Ledesma* (2003) 106 Cal.App.4th 857, 864 [131 Cal.Rptr.2d 249] (*Ledesma*)). And in some instances, an entry of a residence solely to conduct a protective sweep may be justified to ensure the safety of officers effectuating arrests just outside. (*People v. Maier* (1991) 226 Cal.App.3d 1670, 1675 [277 Cal.Rptr. 667]; see *Ledesma*, at p. 864, fn. 3.) " '[I]n some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers' as one conducted inside the house. [Citations.]" (*Celis, supra,* 33 Cal.4th at p. 679, italics omitted.) The facts known to the officers before they perform such a protective sweep must still satisfy *Buie*; there must be " 'articulable facts' considered together with the rational inferences drawn from those facts, that would warrant a reasonably prudent officer to entertain a reasonable suspicion that the area to the swept harbors a person posing a danger to officer safety. [Citation.]" (*Celis*, at pp. 679–680, citing *Buie, supra,* 494 U.S. at pp. 327, 334.)

### C. *Analysis of Claim of Error*

■ The People bore the burden below of demonstrating the reasonableness of the search under a recognized exception to the general proscription against the warrantless entry into a home. (*Vale v. Louisiana* (1969) 399 U.S. 30, 34 [26 L.Ed.2d 409, 90 S.Ct. 1969]; *People v. James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) As explained by our high court, a

---

[7] The high court in *Celis* assumed without deciding that the lower "reasonable suspicion" standard of *Buie*—rather than the higher probable cause standard (*Minnesota v. Olson* (1990) 495 U.S. 91, 100 [109 L.Ed.2d 85, 110 S.Ct. 1684])—applied when police detained, rather than arrested, a suspect outside and then conducted a protective sweep of the suspect's house. (*Celis, supra,* 33 Cal.4th at pp. 678–680.)

warrantless search may be justified under the protective sweep doctrine where the facts show the police had "a *reasonable suspicion* that the area to be swept harbors a dangerous person. [Citation.]" (*Celis, supra,* 33 Cal.4th at p. 678.) Here, there was no showing that Deputy Palanov was justified under the protective sweep exception in entering defendant's home and then his bedroom. Defendant was in handcuffs outside the residence and presented no threat to the deputies. The crime itself that the deputies were investigating had occurred hours earlier and the alleged victim was no longer at defendant's home. Ingram likewise posed no threat. He had been "clear[ed]" by Deputy Orozco of any warrants or wants, and had been frisked and found to have no weapons. The People presented no evidence that Ingram had a criminal history or that the deputies had other evidence suggesting he was a danger to them. Moreover, there was no evidence that deputies were aware of any ongoing criminal activity in the home, or that there were others even present inside, let alone that it "harbor[ed] a dangerous person. [Citation.]" (*Celis, supra,* 33 Cal.4th at p. 678.) To the contrary, Deputy Palanov specifically asked Ingram if there was anyone in the home and he replied in the negative; the deputy did not testify that he had any reason to doubt Ingram.

This case is governed by *Celis, supra,* 33 Cal.4th 667. There, a statewide task force was investigating a group suspected of smuggling drugs inside large truck tires. (*Id.* at p. 671.) The investigation led the task force to believe the defendant was involved in the operation, and his home was placed under surveillance; an officer determined that the defendant lived with his wife and possibly a male juvenile. (*Id.* at p. 672.) After the defendant was followed home by task force members, they observed him rolling a truck tire from his house toward an alley where another suspected member of the drug ring had arrived in a truck. (*Ibid.*) The police detained the defendant and his associate outside. (*Ibid.*) Officers then entered the residence "to determine if there was anyone inside who might endanger their safety." (*Ibid.*) They found no one inside, but did locate a large box containing wrapped packages of cocaine. (*Id.* at pp. 672–673.)

The high court held that the facts known to the officers "fell short" of evidence supporting a reasonable suspicion of the existence of a dangerous person in the residence that would justify a warrantless search under the protective sweep doctrine. (*Celis, supra,* 33 Cal.4th at p. 679.) While the police had information that two other people lived with the defendant, they had no information that anyone was inside the home when they detained the defendant outside. (*Ibid.*) Further, the record did not indicate the defendant or his coconspirator was armed at the time they were detained, and the police had found no weapons during their earlier investigation of the drug operation. (*Id.* at pp. 672, 679.)

 Here, there are even fewer facts than in *Celis* that justified a protective sweep. Unlike in *Celis*, the deputies in this case had no information whatsoever that anyone lived in the home besides defendant and Ingram; in fact, they had been told by Ingram that no one was inside. Further, the deputies had no evidence that Ingram was dangerous or had any criminal history. And without in any way minimizing the crime of domestic violence, compared with drug smuggling—where weapons are considered to be " ' "tools of the trade" ' " (*Ybarra v. Illinois* (1979) 444 U.S. 85, 106 [62 L.Ed.2d 238, 100 S.Ct. 338] (dis. opn. of Rehnquist, J.)—no suspicion of the presence of weapons may be inferred merely by the nature of the suspected crime of domestic violence. (See *Ledesma, supra,* 106 Cal.App.4th at p. 865 ["the type of criminal conduct underlying the arrest or search is significant in determining if a protective sweep is justified"]; 3 LaFave, Search and Seizure, *supra,* § 6.4(c), p. 377 [where police have no concrete information about other persons being present, "the dominant consideration is the seriousness of the criminal conduct for which the arrest was made . . ."].)[8]

The case of *People v. Ormonde* (2006) 143 Cal.App.4th 282 [49 Cal.Rptr.3d 26] (*Ormonde*) also demonstrates that the claimed justification of the protective sweep doctrine lacks merit here. In *Ormonde*, an officer and a detective responded to an apartment complex where there had been a report of domestic violence. (*Id.* at p. 286.) They detained a man standing near a car parked close to the defendant's apartment. (*Ibid.*) While the officer spoke with the man believed to be the suspect, the detective—after looking through the open front door of the defendant's apartment and seeing no one, and believing that the domestic violence incident occurred either inside or outside that unit—entered the apartment because he was uncertain whether someone might emerge with a weapon. (*Id.* at p. 287.)

After rejecting the People's contention that the search was justified under the exigent circumstances doctrine (*Ormonde, supra,* 143 Cal.App.4th at pp. 291–292), this court considered whether the search was appropriate as a protective sweep. We concluded it was not, because the detective knew that the victim was not on the premises, did not believe there was anyone in the unit, and was simply attempting to find out if someone was inside. (*Id.* at p. 294.) The record did not show that the detective "actually suspected that a person was inside [the apartment], or that he had any grounds for suspecting

---

[8] The People in their written opposition below argued that defendant had at least two guns registered in his name, and that the potential presence of firearms in the house was one factor justifying the warrantless search for officer safety reasons. There was no evidence presented at the hearing to this effect. Accordingly, it may not be considered in support of the propriety of the court's ruling.

as much." (*Ibid.*) Rather, the detective's sole basis for performing the sweep was his general experience that domestic violence incidents often involve danger to responding officers. (*Id.* at pp. 287, 294.) We concluded that the detective's general experience failed to "rise to a reasonable suspicion that the area to be swept harbor[ed] an individual or individuals posing a danger to those on the arrest scene," as required under *Buie, supra,* 494 U.S. 325 and *Celis, supra,* 33 Cal.4th 667. (*Ormonde, supra,* 143 Cal.App.4th at p. 295.) We explained: "It does not appear to be enough, under *Celis,* that the police were genuinely apprehensive of danger based on past experience with domestic battery situations or large-scale drug operations. [¶] . . . [T]o say that the warrantless entry into defendant's home in this case was justified because of a police officer's past experiences with domestic violence arrests would be tantamount to creating a domestic violence exception to the warrant requirement. This we cannot do. [Citation.]" (*Ibid.*)

Likewise, in this case, the evidence showed nothing more than a generalized concern for officer safety on the part of Deputy Palanov. Whether this concern, as in *Ormonde,* was based upon the deputy's view that domestic violence investigations are fraught with danger, or was simply an expression of uncertainty in the particular circumstance involving defendant and Ingram, it was not one that constituted a reasonable suspicion based upon articulable facts.

■ As the First District Court of Appeal has explained, " '[T]he mere abstract theoretical "possibility" that someone dangerous might be inside a residence does not constitute "articulable facts" ' justifying a protective sweep. Where an officer has no information about the presence of dangerous individuals, the courts have consistently refused to permit this lack of information to support a 'possibility' of peril justifying a sweep. [Citations.]" (*Ledesma, supra,* 106 Cal.App.4th 857, 866; see *U.S. v. Chaves* (11th Cir. 1999) 169 F.3d 687, 692; *U.S. v. Archibald* (6th Cir. 2009) 589 F.3d 289, 299–300; *U.S. v. Moran Vargas* (2d Cir. 2004) 376 F.3d 112, 115–117.) And—like *Celis* and *Ormonde*—courts elsewhere have similarly held that police officers' entry into premises after arresting the defendant outside is not justified under the protective sweep doctrine where the facts do not support a reasonable suspicion of there being a person inside posing a threat. (See, e.g., *U.S. v. Colbert* (6th Cir. 1996) 76 F.3d 773, 777–778; *U.S. v. Delgadillo-Velasquez* (9th Cir. 1988) 856 F.2d 1292, 1298–1299; *State v. Hedley* (Del.Super.Ct. 1990) 593 A.2d 576, 580–581; *Reasor v. State* (Tex.Crim.App. 2000) 12 S.W.3d 813, 815–817; *Commonwealth v. Robertson* (2008) 275 Va. 559 [659 S.E.2d 321, 324–325].)

Here, there were no particularized facts supporting a reasonable suspicion that there was a dangerous person inside defendant's home. Therefore, since

"a protective sweep may not be based on 'a mere "inchoate and unparticular-ized suspicion or 'hunch' " ' " (*Celis, supra*, 33 Cal.4th at p. 678), Deputy Palanov's warrantless entry into the home was not justified under the protective sweep doctrine.[9]

### D. *Conclusion*

The motion to suppress seemingly embraced all evidence discovered and seized by deputies, both from the warrantless search of defendant's home and the subsequent search of the garage pursuant to a warrant. The court's order did not distinguish between any specific aspects of the search; rather, it denied defendant's motion in its entirety. Although we have concluded the initial warrantless search was unlawful and the court therefore erred in denying the suppression motion, we provide an analytic framework below of the four distinct aspects of the challenged search in order to explain our holding and provide guidance to the court and parties on remand.

### 1. *Plain View Items in Defendant's Bedroom*

The items discovered by Deputy Palanov in defendant's bedroom in plain view—the baggie of marijuana and notebook on the dresser and the "one or two large gallon-sized bags filled with marijuana bud[s]" and fireworks in the closet—should have been suppressed. This evidence was the product of an unlawful warrantless search which was not justified under the protective sweep doctrine or under any other recognized exception.

### 2. *Concealed Items in Defendant's Bedroom*

The court should have also suppressed the evidence seized by Deputy Palanov from defendant's bedroom that was not in plain view—the cash and psilocybin found in the dresser drawer. The deputy did not have the right to

---

[9] The focus of the Attorney General's position is that the warrantless entry was justified by the protective sweep doctrine. But she asserted in cursory fashion in her brief and more extensively in oral argument that the search was also proper under *Washington v. Chrisman* (1982) 455 U.S. 1 [70 L.Ed.2d 778, 102 S.Ct. 812] (*Chrisman*). *Chrisman* does not support the Attorney General's position. There, a campus police officer saw an underage student carrying a bottle of gin and asked him for identification. (*Id.* at p. 3.) After the student said his identification was in his dorm room and asked to retrieve it, the officer said that he would need to accompany him to the room. (*Ibid.*) The high court held that it was entirely appropriate, given the risk of danger and flight, that an officer monitor the movements of a person he or she has placed under arrest and that in this instance, accompanying the student to his dorm room was not unreasonable under the Fourth Amendment. (455 U.S. at p. 7.) Here, had it been *defendant* who had asked to retrieve his shoes and keys from the home, it would have been appropriate under *Chrisman* for a deputy to accompany him into the home in order to monitor his movements. The same is not the case with respect to Ingram, who had not been arrested or detained and was not the subject of any suspicion.

search defendant's bedroom, so that even the seizure of contraband in plain view was improper. The People even conceded below in their opposition that "confiscated items from the Defendant's bedroom that were not in plain view . . . should be suppressed." Thus, to the extent the court's order denied suppression of the seized evidence that was not in plain view, it was error.[10]

### 3. *Warrantless Search of Remainder of Home*

We next consider the items seized and observations of the deputies resulting from their warrantless search of the remaining areas of the home after the initial search of defendant's bedroom. The evidentiary items consisted of a digital scale in Ingram's bedroom, sorting trays and a small marijuana plant in the third bedroom, and two plastic bags with marijuana buds in the kitchen. The nontangible evidence included Deputy Palanov's observations outside of the garage leading to suspicions that there might be marijuana growing there. This evidence was discovered as a result of the consent given by Ingram to Deputy Orozco to search his bedroom and the other areas of the residence. That consent was given *after* (1) Deputy Palanov's initial illegal search of defendant's bedroom, (2) the deputy directed Ingram to go outside, and (3) Ingram was detained by Deputy Orozco. Defendant therefore contends that Ingram's consent was tainted. He argues that because Deputy Palanov's search of defendant's bedroom was illegal, Ingram's subsequent detention was illegal and the product of that detention—Ingram's consent—was inadmissible.

" 'When the People seek to justify a search on the ground that consent was given, they have the burden of proving . . . that the consent was lawful, was not a mere submission to authority, and was not inextricably bound up with unlawful conduct.' [Citation.]" (*Lawler, supra,* 9 Cal.3d at p. 163.) As a general matter, "consent to search given 'immediately following an illegal entry or search' is invalid because it 'is inseparable from the unlawful conduct.' " (*People v. Willis* (2002) 28 Cal.4th 22, 29 [120 Cal.Rptr.2d 105, 46 P.3d 898], quoting *Burrows v. Superior Court* (1974) 13 Cal.3d 238, 251 [118 Cal.Rptr. 166, 529 P.2d 590].) And it is likewise generally true that consent given following an illegal detention is inadmissible. (*Florida v. Royer* (1983) 460 U.S. 491, 507–508 [75 L.Ed.2d 229, 103 S.Ct. 1319]; *People v. Zamudio* (2008) 43 Cal.4th 327, 341 [75 Cal.Rptr.3d 289, 181 P.3d 105] (*Zamudio*).) "Where an illegal detention occurs, unless 'subsequent events adequately dispel the coercive taint of the

---

[10] Because the sweep was invalid, the notebook on top of the dresser should have been suppressed even though it was in plain view. Even were the entry into defendant's bedroom a lawful protective sweep, the contents of the notebook—namely, the "pay/owe" entries ascertained by Deputy Palanov by opening the notebook and reviewing it—were not in plain view and should have been suppressed.

initial illegality, i.e., where there is no longer causality, the subsequent consent is' ineffective. [Citations.]" (*Zamudio*, at p. 341.)

Here, the Attorney General offers no argument in response to defendant's claim that the consent Ingram gave to the search of his bedroom and other areas of the house was invalid. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [279 Cal.Rptr. 847, 807 P.2d 1076] [respondent's failure to respond to appellant's argument represents apparent concession].) And her apparent concession of the point—assuming her argument that the initial warrantless entry into the home was justified fails—also is contained in her brief.[11] The record in any event is devoid of evidence suggesting that there were " 'subsequent events [that] adequately dispel[led] the coercive taint of the illegality.' " (*Zamudio, supra*, 43 Cal.4th at p. 341.) The People did not meet their burden of proving that this aspect of the search was the product of Ingram's lawful consent. Therefore, the court should have suppressed all evidence from the deputies' warrantless search of the areas of the home following the initial search of defendant's bedroom, including Ingram's bedroom, the third bedroom, the kitchen, the backyard, and the exterior of the garage.[12]

#### 4. *Search of Garage Pursuant to Warrant*

Lastly, we address briefly the search of defendant's garage pursuant to a warrant. As noted by defendant, the appellate record is not adequate to address the merits of his claim below that the search of the garage was unlawful. Specifically, the affidavit of Detective Ulrich, which was the basis for the court's issuance of the warrant, is not before us. But excerpts of the affidavit are referred to and quoted in defendant's suppression motion. As described in defendant's motion, Detective Ulrich recited in his affidavit that (1) other deputies had interviewed the alleged victim; (2) the deputies then traveled to defendant's home and arrested him outside of the house; (3) Deputy Palanov then accompanied Ingram inside the house for officer safety reasons and the deputy discovered marijuana and psilocybin in defendant's bedroom; (4) Detective Ulrich arrived at the house, entered the home and

---

[11] The passage of respondent's brief to which we refer reads: "Appellant cannot establish that the exclusion of secondary evidence serves as a basis for granting appellate relief. If the initial entry was invalid, appellant is entitled to relief. If the entry was valid, the evidence observed in plain view fully justifies the plea agreement. It also validates the subsequent consent given by the roommate for a more thorough search of the common areas within the residence."

[12] Since it is the People's burden to show that a warrantless search is justified by the valid consent of the defendant or third party (*Lawler, supra*, 9 Cal.3d at p. 163), and in any event due to the Attorney General's apparent concession, it is unnecessary to address defendant's ineffective assistance claim based upon trial counsel's failure to specifically argue the invalidity of Ingram's consent.

observed " 'the items found by Deputy Palanov' "; (5) Detective Ulrich estimated that approximately one pound of marijuana was in the residence; and (6) Detective Ulrich went into the backyard, walked around the garage, observed that the smell of fresh marijuana appeared to emanate from the building and heard multiple fans running and water dripping.

■ Under the "fruit of the poisonous tree" doctrine, both direct and indirect products of an unreasonable search are subject to exclusion. (*Wong Sun v. United States, supra*, 371 U.S. at pp. 484–485; *Murray v. United States* (1988) 487 U.S. 533, 536–537 [101 L.Ed.2d 472, 108 S.Ct. 2529].) As explained by the California Supreme Court, " '[C]onducting an illegal warrantless search and including evidence found in this search in an affidavit in support of a warrant is an activity that the exclusionary rule was meant to deter.' [Citation.] Moreover, because 'the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search' [citation], the rule logically ought to bar the use of such evidence to support the issuance of a search warrant." (*People v. Machupa* (1994) 7 Cal.4th 614, 628 [29 Cal.Rptr.2d 775, 872 P.2d 114]; see *People v. Willis, supra*, 28 Cal.4th 29 [probable cause to support issuance of search warrant cannot be based upon observations made after warrantless unlawful entry].)

As is evident from the partial record before us, it is distinctly possible that the affidavit which resulted in the issuance of the search warrant was based largely if not entirely upon evidence obtained illegally from the prior warrantless searches of defendant's home.[13] If that is the case, were the court to conclude, after excising the illegally obtained information from the affidavit, that there was no probable cause for the warrant's issuance, it would necessarily follow that evidence obtained from execution of that warrant should be suppressed. Because of the absence of a complete record, however, we deem it appropriate for the court to address this issue on remand should further proceedings challenging this aspect of the search be forthcoming.

## DISPOSITION

The order of probation is reversed. The trial court shall permit defendant to withdraw his no contest plea. In the event he elects to withdraw his plea, the trial court shall vacate its order denying the motion to suppress, shall grant

---

[13] The Attorney General seemingly admits this in her brief: "The trial court's ruling that the entry was proper and the items in plain sight could be admitted at trial, as well as the fact that *the police obtained a search warrant based on the plain view observations*, provided the basis for the plea agreement." (Italics added.)

the motion to suppress the evidence discovered through the warrantless searches of defendant's home, and shall conduct further proceedings consistently with this opinion.

Rushing, P. J., and Premo, J., concurred.