Filed 2/24/16  P. v. Boselli CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL DANIEL BOSELLI,<br><br>    Defendant and Appellant. | D067751<br><br><br>(Super. Ct. No. SCE334640) |

APPEAL from orders of the Superior Court of San Diego County, John H. Thompson and Laura W. Halgren, Judges.  Affirmed.

Nicholas De Pento for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

Law enforcement officers seized incriminating evidence against Michael Boselli after they obtained a search warrant based on observations they made during a warrantless "protective sweep" of his trailer after arresting him on an outstanding

misdemeanor warrant. At a special hearing following the preliminary hearing, defendant moved to suppress the evidence under Penal Code section 1538.5[1] on the basis that the protective sweep was not justified because no articulable facts suggested someone else might be in the trailer and posing a threat to the officers. The trial court denied the motion.

Thereafter, defendant retained new counsel and moved for a trial continuance to allow enough time for the court to hear a second suppression motion. This time defendant maintained that new evidence was available and that ineffective assistance of counsel affected the outcome of his first suppression motion. The trial court denied the continuance, reasoning it had no jurisdiction to hear a second suppression motion and, therefore, there was no need to continue trial.

Defendant contends both rulings were in error. We disagree, and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In a seven-count complaint, the People charged defendant with (1) possession of a firearm by a felon; (2) person prohibited owning/possessing ammunition/firearm; (3) possession of nunchaku; (4) possession of a cane sword; (5) possession of marijuana for sale; (6) possession of concentrated cannabis; and (7) cultivating marijuana.

*Suppression Hearing*

Defendant moved to suppress most of the evidence against him, arguing police obtained it based on observations they made during an improper warrantless search of the

---

[1] All further statutory references are to the Penal Code.

2

trailer in which he lived. At the hearing on defendant's motion, the People called two law enforcement witnesses, and defendant called his mother and another relative. We base the following factual summary on their testimony.[2]

On the morning of October 17, 2013, San Diego Sheriff's Detective Howard Bradley and other members of the San Diego Regional Fugitive Task Force went to defendant's residence in Lakeside to arrest him on an outstanding misdemeanor warrant for a traffic violation. The officers knew defendant had prior felony convictions for weapons, violence, and drug offenses. The officers had information that James Cruz— another suspect with an outstanding felony warrant and a history of arrests for weapons, violence, and narcotics offenses—was also living at defendant's house.

Defendant lived in a trailer on his parents' large property, which was surrounded by a fence with a gated entry. There was a main house at the front, and several outbuildings and a storage shed in the back. Detective Bradley approached the main house and spoke with defendant's mother, Frances Boselli. After Bradley told Mrs. Boselli that the officers were looking for defendant, she said he lived in a trailer towards the back of the property and told Bradley he could search wherever he wanted. Mrs. Boselli also told Bradley defendant always had people coming and going at all hours of the day, using the property's rear entrance.

---

[2]     Because " 'the trial court resolved this matter in favor of the prosecution, for purposes of this proceeding we view the record in the light most favorable to the People's position.' " (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1200, fn. 3 (*Werner*).)

While Detective Bradley was contacting Mrs. Boselli, Chris Morris (a parole agent who had been assigned to maintain a perimeter around the property) heard officers yelling, "We have a runner, we have runner." An adult male had jumped over the fence and was running away from the property. Officers detained him and determined he was a parolee at large. It was not Cruz.

Meanwhile, other officers on the task force went to defendant's trailer. They saw a four- or five-foot tall marijuana plant growing directly next to the trailer's front door. As the officers approached, dogs inside and outside the trailer barked viciously. When defendant and his girlfriend exited the trailer, the officers asked defendant to secure the dogs and arrested him pursuant to the outstanding arrest warrant. Defendant whispered something into his girlfriend's ear for 15 to 20 seconds, and she went back inside the trailer and closed the door behind her. Fearing she may be getting a weapon, "hiding stuff, people," or destroying evidence, the officers yelled for her not to close the door and to come back outside. She emerged from the trailer after about 30 seconds. After the dogs were placed in the trailer, they continued to bark and push on the door. Agent Morris secured the door with a bolt he found on the ground. The officers handcuffed defendant.

The officers then began conducting a protective sweep of the property and its outbuildings because they were concerned someone else could be hiding or lying in wait. Agent Morris explained he was concerned because of the large size of the property, the fact the officers dispersed through the property while detaining the runner, and the loudness of the barking dogs and the yelling. About 30 minutes after the dogs had been

4

placed inside the trailer, the officers asked defendant to remove them so the officers could look inside to ensure nobody was hiding there.

Inside the trailer, officers saw a large amount of marijuana drying on strings, large containers of bulk marijuana, and packaging materials for the distribution of marijuana. They also saw in plain view a handgun and a pair of nunchaku. In a three-sided shed that was 10 or 15 feet from the trailer, officers saw eight to 10 smaller marijuana plants. Detective Bradley testified that his "training and experience has taught [him] where there is cultivation of marijuana or narcotics involved, there's oftentimes weapons involved, other people coming and going . . . ."[3] The officers did not locate Cruz during the protective sweep.

Detective Bradley asked defendant for consent to search the trailer. Defendant verbally consented, but refused to sign a consent form. As defendant's father tried to convince him to sign the consent form, Bradley overheard their conversation. Defendant told his dad, "If I do, I'm fucked . . . . [¶] . . . [¶] [T]here's a gun in the trailer."

Mrs. Boselli testified she denied giving the officers consent to search the property or telling Detective Bradley that people come and go at all hours. She testified that when she and Bradley spoke, he showed her a photograph of Cruz and said the officers were looking for him. Mrs. Boselli told Bradley she knew Cruz as "James Licari," and said he was her niece's son. Mrs. Boselli testified she told Bradley she had only seen Licari a couple of times, and it was outside the gate to her property.

---

3    During the officers' search of the property, another individual arrived and was arrested for possession of methamphetamine.

Gina Licari testified she was James Cruz's mother. She explained that Cruz goes by his father's last name. Licari testified that in October 2013, Cruz was living in Santee. She said she had never seen Cruz at defendant's property.

The trial court denied defendant's suppression motion, relying on the following evidence: (1) officers had information that "two potential subjects of arrest were present, both of which had histor[ies] of narcotics, as well as violence . . . or gun backgrounds"; (2) officers confirmed one of those subjects (defendant) was likely present "and the other individual who was subject to the arrest might have been there"; (3) Mrs. Boselli gave a "general consent to search"; (4) the runner's act of fleeing the property "suggest[ed] that there might be other people present at the trailer"; (5) officers observed contraband outside the trailer; and (6) the scene seemed "somewhat chaotic . . . , with people running away from the residence, dogs barking, attempts to get that matter resolved, knowing that they had these two individuals at or near the property . . . ." Under these circumstances, the trial court remarked, "I can't believe they would *not* have conducted a protective sweep of the trailer. The very nature of the atmosphere would have *required* it, at least in my opinion." (Italics added.)

### Trial Continuance

Defendant subsequently changed counsel twice. His new counsel moved to continue the trial date in order to bring a new suppression motion under section 1538.5, subdivision (i). Defendant cited two bases for his new suppression motion. First, his girlfriend, who was not available during the original motion hearing, was now available

6

and would demonstrate that a protective sweep was not justified.[4]  Second, defendant argued his prior counsel's "presentation" of the first suppression motion was "unsatisfactory."  As examples, he cited counsel's failure to (1) call defendant and his father as witnesses; and (2) examine defendant and his parents regarding the timeframe of the protective sweep, the officers' lack of consent, and defendant's supposed admission that he had a gun in the trailer.

The People opposed the motion on the basis that the trial court lacked jurisdiction to rehear the suppression motion because the court had already denied the first motion after holding a special hearing following the preliminary hearing.  The trial court agreed, finding no continuance was necessary because a renewed suppression motion "would not be procedurally properly before the court."  Accordingly, the court did not address the merits of the second suppression motion.

### Guilty Plea and Sentence

Within one week of the court's denial of his motion for continuance, defendant pleaded guilty to each of the seven counts against him and admitted three prison prior enhancement allegations.  The trial court sentenced defendant to four years in state prison.

---

[4]     Defendant explained it took him and a private investigator months to locate the girlfriend because after defendant's arrest they broke up, she relocated, her new residence burned down, and she was left homeless.

7

DISCUSSION

I.  *Suppression Motion*

Defendant contends the trial court erred by denying his suppression motion because there were no articulable facts justifying the officers' protective sweep.  We disagree.

A.  *Protective Sweep Doctrine*

"The federal and state Constitutions prohibit . . . unreasonable searches."  (*People v. Celis* (2004) 33 Cal.4th 667, 676 (*Celis*); U.S. Const., 4th & 14th Amends.; Cal. Const., art. I, § 13.)  A warrantless entry into a residence is " 'presumptively unreasonable.' "  (*Celis*, at p. 676; *Werner, supra*, 207 Cal.App.4th at p. 1198.) " 'Nevertheless, because the ultimate touchstone of the Fourth Amendment is "reasonableness," the warrant requirement is subject to certain exceptions.' "  (*People v. Troyer* (2011) 51 Cal.4th 599, 602.)  "One such exception is the protective sweep." (*Werner*, at p. 1205.)

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  (*Maryland v. Buie* (1990) 494 U.S. 325, 327 (*Buie*).)  "The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."  (*Id.* at pp. 335-336.)

*Buie* recognized two circumstances in which protective sweeps are permissible.  In the first, "as an incident to the arrest," police may, "as a precautionary matter and without

8

probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." (*Buie, supra*, 494 U.S. at p. 334.) In the second, police may sweep beyond the immediate area of arrest if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." (*Ibid.*) "[A] protective sweep may not be based on 'a mere "inchoate and unparticularized suspicion or 'hunch.' " ' " (*Celis, supra*, 33 Cal.4th at p. 678, quoting *Buie*, at p. 332.) This category of protective sweep is subject to the "reasonable suspicion" standard of proof. (*Celis,* at p. 678.)

"A protective sweep is not limited to situations immediately following an arrest . . . ." (*Werner, supra*, 207 Cal.App.4th at p. 1206.) "[I]n some instances, an entry of a residence solely to conduct a protective sweep may be justified to ensure the safety of officers effectuating arrests just outside." (*Id.*, citing *People v. Maier* (1991) 226 Cal.App.3d 1670, 1675, and *People v. Ledesma* (2003) 106 Cal.App.4th 857, 864, fn. 3 (*Ledesma*).) This is because " 'in some circumstances, an arrest taking place just outside a home may pose an equally serious threat to the arresting officers' as one conducted inside the house." (*Celis, supra*, 33 Cal.4th at p. 679; *Werner*, at p. 1206, italics omitted.)

"The People bore the burden below of demonstrating the reasonableness of the search under a recognized exception to the general proscription against the warrantless entry into a home." (*Werner, supra*, 207 Cal.App.4th at p. 1206; see *Vale v. Louisiana* (1970) 399 U.S. 30, 34.) "On appeal from a motion to suppress evidence, all

9

presumptions are in favor of the trial court's factual findings, whether express or implied, where supported by substantial evidence, and we review de novo the facts most favorable to the People to determine whether the officers' conduct in performing the protective sweep of defendant's home was reasonable under the Fourth Amendment." (*Ledesma, supra*, 106 Cal.App.4th at p. 862.)

### B. *Analysis*

The record shows that articulable facts, and the reasonable inferences drawn from them, support a reasonable suspicion that someone may have been inside the trailer and posing a threat to the officers. The officers had information that defendant *and* Cruz were present. The officers knew both suspects had histories of drug, violence, and weapons offenses. Mrs. Boselli told the officers people come and go from the trailer at all hours, using the property's rear entrance. Consistent with this information, officers detained one man who was fleeing the property when they arrived, and another who arrived later in possession of methamphetamine. The officers saw a marijuana plant growing immediately outside the trailer, which suggested to them "there's oftentimes weapons involved, other people coming and going . . . ." (See, e.g., *Ledesma, supra*, 106 Cal.App.4th at p. 865 ["Firearms are, of course, one of the ' "tools of the trade" ' of the narcotics business."].) Defendant's girlfriend disappeared into the trailer, which heightened the officers' concerns regarding the presence of weapons or concealment of a third person inside. Dogs were barking viciously at the officers, contributing to a "chaotic" scene. We find these circumstances "would warrant a reasonably prudent

10

officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." (*Buie, supra*, 494 U.S. at p. 334.)

Defendant relies primarily on *Celis*, *Ormonde*, and *Werner* to support his argument that the officers lacked a reasonable belief based on articulable facts to justify the protective sweep. These cases are distinguishable.

The defendant in *Celis* was part of a drug trafficking ring that transported and sold cocaine inside large truck tires. (*Celis, supra*, 33 Cal.4th at pp. 671-673.) Police detained him when they saw him rolling a truck tire from his house to a waiting coconspirator outside. (*Id*. at p. 672.) Because earlier surveillance suggested the defendant lived with his wife and " 'possibly a male juvenile,' " the police entered the defendant's home "to determine if there was anyone inside who might endanger their safety." (*Ibid*.) They found no one, but did discover packages of cocaine in a wooden box large enough to conceal a person. (*Id*. at pp. 672-673.)

The California Supreme Court held these facts did not create a reasonable suspicion of danger to police justifying a protective sweep of the defendant's home. The court reasoned that because officers had not been keeping track of who was in the house, they entered "without 'any information as to whether anyone was inside.' " (*Celis, supra*, 33 Cal.4th at p. 679.) The court further noted there was no indication the defendant or his coconspirator were armed when police detained them, nor had officers yet confirmed the presence of drugs in the truck tire defendant was transporting. (*Ibid*.)

In contrast to *Celis*, there was substantial evidence here beyond the officers' suspicion that Cruz might be in the trailer. Mrs. Boselli advised Detective Bradley that

11

people come and go at all hours, and the officers detained a fleeing parolee when they arrived.  Whereas the officers in *Celis* did not know if defendant was in possession of narcotics or weapons, the officers here saw marijuana growing outside the trailer and knew defendant and Cruz both had criminal histories involving weapons, violence, and drugs.  These circumstances and the others that contributed to the chaotic scene distinguish this case from *Celis*.

In *Ormonde* and *Werner*, appellate courts held protective sweeps unconstitutional where the officers justified them primarily on the " 'dangerous' " and " 'highly unpredictable' " nature of responding to domestic violence calls.  (*People v. Ormonde* (2006) 143 Cal.App.4th 282, 286, 295; *Werner, supra*, 207 Cal.App.4th at pp. 1208-1209 ["without in any way minimizing the crime of domestic violence, compared with drug smuggling—where weapons are considered to be ' " 'tools of the trade' " ' [citation]—no suspicion of the presence of weapons may be inferred merely by the nature of the suspected crime of domestic violence"].)  Here, the officers' protective sweep was not based solely on the nature of the call, but on the specific circumstances discussed above.

The trial court did not err by denying defendant's suppression motion.

## II.  *Continuance*

Defendant contends the trial court erred by denying his motion for continuance because his renewed suppression motion under section 1538.5, subdivision (i) was not procedurally barred.  We disagree.

Section 1538.5, subdivision (i) provides in pertinent part as follows:

"If the property or evidence obtained relates to a felony offense initiated by complaint and the defendant was held to answer at the preliminary hearing, or if the property or evidence relates to a felony offense initiated by indictment, the defendant shall have the right to renew or make the motion at a special hearing relating to the validity of the search or seizure . . . . If the offense was initiated by indictment or if the offense was initiated by complaint and no motion was made at the preliminary hearing, the defendant shall have the right to fully litigate the validity of a search or seizure on the basis of the evidence presented at a special hearing . . . . After the special hearing is held, any review thereafter desired by the defendant prior to trial shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his or her motion at the special hearing."

As a general rule, "determination of a [section] 1538.5 motion at a special hearing in the superior court . . . deprives that court of jurisdiction to reconsider the matter . . . ." (*Madril v. Superior Court* (1975) 15 Cal.3d 73, 77; § 1538.5, subd. (i).)

There are exceptions to the general rule. For example, a renewed motion may arise under section 1538.5, subdivision (h) on the basis of newly discovered evidence, subject to a " 'due diligence' limitation." (§ 1538.5, subd. (h) ["If, prior to the trial of a felony or misdemeanor, opportunity for this motion did not exist or the defendant was not aware of the grounds for the motion, the defendant shall have the right to make this motion during the course of trial."]; see *People v. Superior Court of Butte County* (1971) 4 Cal.3d 605, 611; *People v. Young* (1976) 62 Cal.App.3d 49, 51-52.) Similarly, a renewed motion may also arise under section 1538.5, subdivision (h) if ineffective assistance of counsel prejudicially affected the outcome of the first suppression hearing. (See *People v. Jones* (2010) 186 Cal.App.4th 216, 236-244 [defendant established

13

ineffective assistance of counsel at first suppression hearing where defense counsel failed to locate potential eyewitnesses and failed to engage investigator].)

Here, however, defendant did not properly invoke in the trial court any of the exceptions to the general rule against relitigating suppression motions. Defendant's motion for continuance and proposed renewed suppression motion both referenced section 1538.5, subdivision (i), *not* subdivision (h). Moreover, neither motion cited the case law authority regarding exceptions to the general rule against successive suppression motions.

Having already fully litigated his suppression motion at a special hearing held after his preliminary hearing, defendant's avenue for challenging the outcome of that hearing "shall be by means of an extraordinary writ of mandate or prohibition filed within 30 days after the denial of his or her motion at the special hearing." (§ 1538.5, subd. (i).) At oral argument, defendant's appellate counsel acknowledged that defendant did not timely challenge the trial court's ruling by writ review, and the time to do so had long since lapsed before he substituted in as counsel. Thus, the trial court properly denied defendant's request for a continuance on the basis that a renewed suppression motion was not authorized by section 1538.5, subdivision (i).[5]

---

5      We do not construe our ruling as precluding defendant from challenging by way of writ of habeas corpus the adequacy of his legal representation in connection with his first suppression motion. We express no opinion on the merits of any such challenge.

14

DISPOSITION

The judgment is affirmed.


                                                                    HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


McDONALD, J.