Filed 1/15/14  P. v. Sherman CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B244564 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA391680) |
| v. | |
| TERAL SHERMAN, | |
| Defendant and Appellant. | |

THE COURT:[*]

A jury convicted appellant Teral Sherman of two counts of second degree burglary (Pen. Code, § 459)[1] and one count of second degree robbery (§ 211).  In a bifurcated proceeding, the trial court found true the allegation that appellant had suffered one prior serious felony conviction (§ 667, subd. (a)(1)) and one prior conviction (strike) within the meaning of California's "Three Strikes" law.  (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i).)  The trial court sentenced appellant to 15 years in state prison comprised of the

---

[*]     BOREN, P. J ., ASHMANN-GERST, J., FERNS, J.†

†     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]     All further statutory references are to the Penal Code unless otherwise stated.

upper term of five years for the robbery, doubled pursuant to the Three Strikes law, plus five years for the prior serious felony conviction. The trial court imposed a concurrent sentence of four years for one count of burglary. A consecutive sentence of four years for the second count of burglary was stayed pursuant to section 654.

## BACKGROUND

### A.    *Factual Background*

On October 8, 2011, at approximately 6:00 p.m., Oscar Iniguez was working in the ice cream department of a Rite-Aid store in the City of Lynwood. The store was equipped with surveillance cameras that recorded activity at the store's entrance and in the ice cream department. Appellant entered the store wearing sunglasses that sat on his forehead and a white T-shirt with a logo in the middle. Appellant ordered ice cream from Iniguez. When the ice cream was ready, appellant came around the counter to the area restricted to employees only. Appellant punched Iniguez in the face and told him to open the cash register. Appellant's sunglasses fell to the floor behind the counter. Iniguez did not know how to open the cash register and moved to the far end of the ice cream department. Appellant dropped the cash register onto the floor, breaking it open. He then grabbed some bills that had fallen from it and left the store.

Los Angeles County Deputy Sheriff Andrew Wyse arrived at the Rite-Aid store and recovered the sunglasses from the floor behind the counter in the area restricted to employees. The sunglasses were submitted to the crime lab for DNA analysis. Salvador Silva told Deputy Wyse that appellant pointed a handgun at Silva when he tried to stop appellant from leaving the area after the robbery.

On December 11, 2011, at approximately 5:00 p.m., Los Angeles Police Department Officer Cody Halchishak and his partner Officer Juan Martinez, responded to a burglary in progress at a 7-Eleven store. The store was boarded up with plywood and was not open for business. The officers saw that a piece of plywood had been pried open. Officer Halchishak looked inside and saw appellant placing cigarettes and alcohol inside two black trash bags. The officers set up a perimeter outside the store and saw appellant exit the store where the plywood had been pried away. Appellant was arrested and

2

approximately 15 cartons of cigarettes and 25 to 30 bottles of alcohol were recovered from the black trash bags.

In January 2012, the DNA extracted from the sunglasses found behind the Rite-Aid counter was entered into the Combined DNA Index System (CODIS), and appellant's name was returned as a matching profile. Detective Boisvert arrested appellant outside appellant's mother's home. A T-shirt with writing resembling the T-shirt worn by the perpetrator in the Rite-Aid surveillance video was among the items recovered during a search of the residence.

Iniguez did not select appellant's photograph when shown a photographic lineup consisting of six photographs. At trial, when shown the surveillance video of the robbery he identified appellant as the perpetrator. Christopher Lee is a senior criminalist with the sheriff's department. He conducted a technical review of the DNA analysis performed in this case. The DNA profile developed from appellant was compared with the DNA profile obtained from the sunglasses recovered from the Rite-Aid store. Lee opined that the two profiles matched with a random match probability of one in 33 quadrillion.

### B.     Procedural Background

On January 5, 2012, an information charged appellant with one count of second degree commercial burglary, in case No. BA391680. In case No. TA121872 appellant was charged with one count of second degree commercial burglary and one count of second degree robbery. On May 8, 2012, appellant filed a "Notice of Motion to Suppress Evidence" in case No. TA121872. After the trial court granted the People's motion for joinder, an amended information was filed on May 31, 2012, that combined case No. BA391680 and case No. TA121872. On July 27, 2012, the trial court relieved defense counsel as counsel of record and granted appellant's request to proceed in pro. per.

On August 2, 2012, a jury was selected and testimony commenced the following day. On August 3, 2012, appellant's motion to suppress evidence was denied. On August 7, 2012, the jury returned guilty verdicts on all three counts. On September 7, 2012, appellant filed a "Motion for a New Trial." Appellant alleged that he was "denied

3

his due process right to a full litigated suppression hearing on illegally obtained evidence from an (*sic*) warrant/illegal search." On September 10, 2012, the trial court denied appellant's motion for new trial and sentenced appellant to a total aggregate term of 15 years in state prison. On October 11, 2012 appellant filed a timely Notice of Appeal from the judgment.

## DISCUSSION

We appointed counsel to represent appellant on appeal. After examining the record, counsel filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436, raising no issues, but requesting that this court independently review the entire record to determine if there are any issues, which if resolved in appellant's favor, would require reversal or modification of the judgment. On August 6, 2013, we gave notice to appellant that his appointed counsel had not found any arguable issues, and that he had 30 days within which to submit by brief or letter any grounds of appeal, contentions, or arguments he wanted this court to consider. On September 3, 2013, appellant submitted an eight-page brief contending that the trial court erred in denying his motion to suppress evidence.

**Appellant's section 1538.5 Motion**

*Appellant's Contention*

Appellant contends the trial court erred in its ruling that probable cause had been established prior to or during a warrantless search. Appellant challenges the legality of the entry into Ms. Sherman's residence, the protective sweep, and the probable cause to authorize the search warrant.

*Applicable Law*

The United States and California Constitutions prohibit unreasonable searches and seizures. (U.S. Const., 4th & 14th Amends., Cal. Const., art. I, § 13.) A warrantless entry is "presumptively unreasonable." (*Payton v. New York* (1980) 445 U.S. 573, 587.) The presumption may be overcome by specifically establishing one of the few well-delineated exceptions to the warrant requirement. (*Katz v. United States* (1967) 389 U.S. 347, 357.)

4

"Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118; see Cal.Const., art. I, § 28, subd. (d).) "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment. [Citation.]" (*Lenart, supra,* at p. 1119.)

Section 1538.5 provides, in relevant part, that "[a] defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure" if the search or seizure "without a warrant was unreasonable" or where there was an absence of "probable cause for the issuance of the warrant."

"'"'A proceeding under . . . section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact*.' [Citation.]" [Citation.] . . . In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' [Citation.]" (*People v. Green* (1996) 46 Cal.App.4th 367, 372.)

### *Background Facts*

As the case investigating officer, Detective Boisvert testified that he watched the surveillance video of the Rite-Aid robbery to familiarize himself with the physical description and clothing of the suspect. He was also familiar with the report that a

5

witness said a gun was involved in the robbery and burglary at the Rite-Aid. Detective Boisvert obtained an arrest warrant and a warrant to obtain a DNA sample from appellant based on the information obtained from the CODIS database. On February 1, 2012, Detective Boisvert went to the secondary address associated with appellant which was Ms. Sherman's house. Appellant was found outside the residence and arrested. Detective Boisvert informed Ms. Sherman that he wanted to conduct a protective sweep of her house. She gave him permission to do so. Ms. Sherman told Detective Boisvert that appellant stayed at her house "consistently since he bonded out." She told him that appellant kept clothing items in the closet in her bedroom. Ms. Sherman walked Detective Boisvert into her bedroom. She removed a blanket and pointed to the clothing items in the closet. Detective Boisvert observed a white T-shirt and khaki slacks in the closet that resembled the T-shirt and slacks worn by the suspect in the Rite-Aid surveillance video. Detective Boisvert called two other detectives to come to the location and remain there while he obtained a search warrant to recover the items. Detective Boisvert subsequently swore out the affidavit in support of the search warrant. The search warrant was obtained and the clothing, appellant's driver's license, and some mail in his name were removed from Ms. Sherman's residence.

*Analysis*

Appellant first contends that the protective sweep was impermissible. Relying on *United States v. Lemus* (2010) 596 F.3d 512, he contends the arrest must be made inside the home. In *People v. Werner* (2012) 207 Cal.App.4th 1195, the Sixth Appellate District addressed the propriety of a protective sweep where a defendant was arrested outside his home and police subsequently performed a search of that home. Citing *People v. Maier* (1991) 226 Cal.App.3d 1670, 1675, the court stated that entry of a residence solely to conduct a protective sweep may be justified to ensure the safety of officers effectuating arrests just outside. In any event, in this case, Detective Boisvert testified that Ms. Sherman gave him permission to enter her residence to conduct a protective sweep.

6

Appellant's contention that Detective Boisvert did not have probable cause to obtain the search warrant also lacks merit. Detective Boisvert did not testify that he identified the evidence while conducting the protective sweep. (See *People v. Werner, supra,* 207 Cal.App.4th at p. 1205 [a protective sweep is a quick and limited search of the premises, incident to an arrest or detention, and conducted to protect the safety of police officers or others].) He testified that Ms. Sherman showed Detective Boisvert around her house and indicated where appellant kept his clothing. She pointed out the clothing to Detective Boisvert and he identified the T-shirt from the Rite-Aid surveillance video. At that point he did not remove the T-shirt or any other items from the residence. He secured the location and prepared an affidavit of probable cause in support of a search warrant. We must defer to the trial court's factual finding that Detective Boisvert's testimony was credible. These factual findings are supported by the record.

In sum, we find the trial court properly denied appellant's motion to suppress evidence.

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.