Filed 5/16/16  P. v. Silas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C078187 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F02009) |
| v. | |
| RAYMOND LAMONT SILAS, | |
| Defendant and Appellant. | |

After the trial court denied his motion to suppress, defendant Raymond Lamont Silas pled no contest to possession of counterfeit marks for sale and possession of methamphetamine for sale and admitted one prior strike conviction.  On appeal, he contends the trial court erred when the court denied his motion to suppress because he did not consent to the search of his girlfriend's car, the search of the car was not a valid inventory search, and the search of his cell phone on the scene of the traffic stop did not fall within the good faith exception to the exclusionary rule.

1

We conclude the search of the car was a valid inventory search, but agree with defendant that the on-scene search of the cell phone did not fall within the good faith exception to the exclusionary rule. Accordingly, we will reverse and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2014, Sacramento Police Officers Mark Redlich and Matt Hoffman pulled over a car defendant Raymond Lamont Silas was driving, which belonged to his girlfriend, after defendant did not use his turn signal when he turned into the parking lot of an apartment complex. When defendant stopped the car, it was blocking traffic into and out of the apartment complex. Officer Redlich approached defendant and asked for his identification. Defendant gave Officer Redlich a California identification card but told Officer Redlich he did not have a driver's license because it was suspended. Officer Redlich asked defendant to step out of the car and then took defendant over to his patrol car. Based on defendant's admission that his driver's license was suspended, Officer Redlich's intention was to conduct an inventory of the car and have it towed.

While defendant was standing next to the door of the patrol car in handcuffs, Officer Redlich said to him, "Is there anything illegal in the car? Nothing? Okay. We're gonna end up going through it okay. You cool with that?" Officer Redlich testified that defendant responded by giving consent to search the car. Officer Redlich then conducted a records check and confirmed defendant's license was suspended for driving under the influence.

Officer Redlich testified that it was the department's "common policy . . . to tow vehicles when people are driving on [a] suspended license." The officer explained that pursuant to this policy, when someone has a suspended license he tows the car unless there is an "articulable fact" justifying not towing the vehicle, such as "there [are] infants or small children in a vehicle and it [i]s pouring down rain, or if there is someone with a severe type of disability that would be stranded on the side of the road."

2

Officer Hoffman testified that the officers towed the car because defendant "was driving on a suspended driver's license [¶] [and] the vehicle was stopped in the middle of the parking lot, obstructing traffic from the entrance and people as they parked into their spaces." Officer Hoffman stated that another articulable reason for not towing a car might be if there was "a passenger that had a valid driver's license . . . and he was cooperating on something else . . . [he] might let the passenger take custody of the vehicle . . . ."

During the stop, while the inventory search of the car was already underway, defendant's girlfriend, Anneke Pruitt, approached the officers and demanded that they give her the car. Officer Hoffman testified that they did not give Pruitt her car because of her "hostility towards the police and not having anything to do with [the] scene."

During the inventory search, Officer Redlich found a "black mesh see-through bag that contained [about 49] sports brand hats" in the backseat of the car. He also searched defendant's trunk and found another see-through mesh bag containing about 20 "sports jerseys" and "a black garbage bag . . . that contained leather belts." He also found 10 pairs of pants in the car. He thought all of the clothing items were counterfeit and was suspicious because of the number of clothing items, because the clothing items were for various teams of a single sport, and because the stickers on the hats did not have holograms on them.

After he found the various apparently counterfeit items in the car, Officer Redlich conducted a search of defendant's cell phone while on the scene of the traffic stop, as a search incident to defendant's arrest, but he could not remember where he found the phone. For his part, Officer Hoffman could not recall who found the phone or where it was found. It is unclear what evidence, if any, Officer Redlich located in this initial warrantless search of the phone.

After the inventory search and the search of the cell phone, police officers obtained a search warrant and searched an apartment shared by defendant and Pruitt,

3

where they found more counterfeit clothing, methamphetamine, a box of plastic baggies, and a digital scale. During the search of a second address, the police also found additional counterfeit items. Officers also apparently obtained a search warrant to search the cell phone found during the traffic stop and found text messages they believed referred to the sale of narcotics and the sale of clothing.

Defendant was charged with possession of counterfeit marks for sale, possession of methamphetamine for sale, driving a car without a valid driver's license, driving a car with a driver's license suspended for driving under the influence of an alcoholic beverage and a drug, driving a car with a suspended driver's license, and driving a car not equipped with a functioning ignition interlock device.

Defendant moved to suppress the evidence against him, including all counterfeit items found during the search of the car, as well as "the methamphetamine, baggies, digital scale, and the counterfeit goods" found at the apartment and "all data obtained from [his] cell phone and any fruits thereof" on the ground that there was no justification for the initial warrantless search and seizure. The People responded (among other things) that the search of the car was a valid inventory search and a valid consent search. In a supplemental brief, defendant argued (among other things) that the search was not a valid inventory search because it was not conducted pursuant to standardized criteria or an established routine and because no community caretaking function was served by impounding the car.

The trial court (the Honorable Pamela Smith-Steward) viewed and listened to an audio-video recording of the traffic stop and then heard the testimony of Officers Redlich and Hoffman. When the officers had finished testifying, the prosecutor told the court she had not anticipated that neither of the officers would remember where the cell phone was found, and she asked the court "for a little more time to see whether or not an inevitable discovery argument can be made, depending on what the content of the search warrant is with regard to the cell phone, what information was in that search warrant." Defense

4

counsel did not object to a continuance and stated that he had a supplemental brief he wanted to file to "provide a little guidance to the Court in the sense that the search warrant for the cell phone included, as part of the affidavit for probable cause, the sum of the information and data that was found, I believe, during Officer Redlich's initial search of the cell phone." The prosecutor stated that she might prepare a supplemental brief as well "specifically on the cell phone issue," and the court continued the hearing for two weeks.

Three days before the continued hearing, defense counsel filed a supplemental brief that addressed, in part, the search of defendant's cell phone incident to his arrest. Defense counsel first pointed out that in *Riley v. California* (2014) 573 U.S. ___ [189 L.Ed.2d 430], which was decided three months after the search at issue here the United States Supreme Court had held that "officers must generally secure a warrant before con[duct]ing a search of data on a suspect's cellular phone." In light of *Riley*, defense counsel anticipated the prosecutor would argue that any evidence obtained from the warrantless search of the cell phone in this case was nonetheless admissible under the good faith exception to the exclusionary rule based on the California Supreme Court's earlier decision in *People v. Diaz* (2011) 51 Cal.4th 84, in which the court had upheld "a warrantless search of the text messages folder of a cell phone . . . as being incident to a lawful custodial arrest." (*Id*. at p. 88.) Attempting to deflect this anticipated argument, defense counsel contended the officers could not have relied in good faith on *Diaz* to justify the warrantless search of the phone because "*Diaz* was in direct contradiction to recognized federal authority as established in *United States v. Wurie* ([1st Cir.] 2013) 728 F.3d 1," in which the federal circuit court had held that the warrantless search of a cell phone could not be justified as part of a lawful search incident to arrest. Defense counsel further argued that because at the time of the search at issue here, the United States Supreme Court had already granted certiorari in both *Wurie* and *Riley*, "any reliance on *Diaz* . . . cannot be characterized as in good faith."

5

Two days later, the prosecution filed its own supplemental brief, arguing (as defense counsel anticipated) that "the evidence on the defendant's cellphone should be properly admitted" because "Officer Redlich was relying on validly binding law in *People v. Diaz*, where the California Supreme Court rejected the arguments that the nature or character of a cell phone, its capacity for storing personal data, or the arrestee's expectation of privacy in its contents required courts to treat the arrestee's cell phone found on him differently from other types of personal effects or containers that may be validly searched incident to arrest."

At the outset of the continued hearing, both parties stipulated "that the cell phone that was searched in this case was found inside the car during the inventory search . . . of the car," "rather than on the person of anyone." Both parties declined to call any additional witnesses, and the matter proceeded to argument. Defense counsel argued defendant's consent to the search of the car was not voluntary and the inventory search was not valid because the officers had no valid reason to impound the vehicle. With regard to the warrantless search of the cell phone, defense counsel referred to a case decided about a week earlier -- *People v. Macabeo* (2014) 229 Cal.App.4th 486, review granted November 25, 2014, S221852 -- in which the appellate court had applied the good faith exception to the exclusionary rule to the warrantless search of a cell phone conducted after *Diaz* but before *Riley*. Counsel argued *Macabeo* was distinguishable because the search in that case predated both *Wurie* and *Riley* and the United States Supreme Court's grant of certiorari in *Riley*.

The prosecutor responded that the search of the car was justified by defendant's consent and as a valid inventory search. On the issue of the cell phone, the prosecutor contended that just because certiorari had been granted in *Riley* did not preclude the officers from relying on existing precedent, "[s]o at the moment when the officers search the cell phone, the good law of the land was . . . essentially, that the officer could search

6

cell phones incident to arrest. And the officer was acting in good faith in accordance with that."

The trial court found that defendant's consent to search the car was not voluntary because "[h]e was in handcuffs, and [because] while one interpretation was that [O]fficer [Redlich's request for consent to search the car] was phrased as a question, it really also could have been taken as a declaratory statement . . . ." The court also concluded, however, that the search of the car was a valid inventory search because the officers cited "statutory authority and [testified] that their policy is to tow in circumstances such as this." The court found the officers' policy "to be pretty clear [because] [t]hey tow unless there are extenuating circumstances." With regard to Officer Redlich's warrantless search of the cell phone, the court found that the good faith exception to the exclusionary rule applied.

After the court denied his motion to suppress, defendant pled no contest to possession of counterfeit marks for sale and possession of methamphetamine for sale and admitted to a strike prior in exchange for dismissal of the remaining charges. Pursuant to the terms of the plea agreement, the trial court sentenced defendant to an aggregate term of five years and four months in prison.

Defendant timely appealed.

DISCUSSION

I

*The Search Of The Car Was A Valid Inventory Search*

Defendant contends the search of the car was not a valid inventory search because "the prosecution [did not meet its] burden of establishing that the impound [of the car] was necessary as part of the officers' community caretaking function, and that the officers were acting in conformance with departmental policy [to impound]." We disagree.

7

"The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"As part of their ' "community caretaking functions," ' police officers may constitutionally impound vehicles that 'jeopardize . . . public safety and the efficient movement of vehicular traffic.' [Citation.] Whether 'impoundment is warranted under this community caretaking doctrine depends on the location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.' [Citation.] If officers are warranted in impounding a vehicle, a warrantless inventory search of the vehicle pursuant to a standardized procedure is constitutionally reasonable. [Citation.] When an inventory search is conducted based on a decision to impound a vehicle, we 'focus on the purpose of the impound rather than the purpose of the inventory,' since an inventory search conducted pursuant to an unreasonable impound is itself unreasonable. [Citation.] Although a police officer is not required to adopt the least intrusive course of action in deciding whether to impound and search a car [citation], the action taken must nonetheless be reasonable in light of the justification for the impound and inventory exception to the search warrant requirement. Reasonableness is 'the touchstone of the Fourth Amendment.' " (*People v. Williams* (2006) 145 Cal.App.4th 756, 761-762.)

Defendant first contends that here "the officers were not impounding the car as part of any community caretaking function" because "it could easily have been moved to a location where it was not blocking anyone." This contention dovetails with defendant's assertion that the prosecution had to prove that impound of the car was "necessary." In fact, the prosecution had no such burden. As the *Williams* court recognized, "a police officer is not required to adopt the least intrusive course of action in deciding whether to

8

impound . . . a car." (*People v. Williams*, *supra*, 145 Cal.App.4th at p. 761.) Instead, to satisfy constitutional principles, the decision to impound the car need only have been "reasonable in light of the justification for the impound." (*Ibid.*)

Here, the decision to impound the car was reasonable. Defendant stopped the car at the entrance to the apartment complex, where it was blocking traffic in and out of the complex. Indeed, even defendant acknowledges the car was blocking traffic when he argues that the car "could easily have been *moved* to a location where it was *not* blocking anyone." (Italics added.) This was not a case like *Williams*, where "[t]he car was legally parked at the curb in front of [the defendant]'s home." (*People v. Williams*, *supra*, 145 Cal.App.4th at p. 762.) Instead, this was a case where, at the very least, the car was " 'jeopardiz[ing] . . . the efficient movement of vehicular traffic.' " (*Id.* at p. 761.) As *Williams* recognizes, officers may constitutionally impound such a vehicle. (*Ibid.*)

Defendant's assertion that Pruitt was "on the scene and available to take custody of her car" makes no difference because the evidence was that the officers had already decided to impound the car and the inventory search of the car was already underway before she appeared. The belated arrival of defendant's girlfriend after the inventory search had begun cannot affect the constitutionality of the decision the officers had *already made* to impound the car.

Additionally, defendant's assertion that "the officers were not concerned about the car's location" -- and thus, by implication, could not have been truly exercising their community caretaking functions in having the car impounded -- is not supported by the evidence. In support of this assertion, defendant cites a portion of the transcript of the audio-video recording of the traffic stop, in which one of the officers asks the other, "You want me to reposition the car?" and the other officer responds, "No. I don't give a shit." The transcript clearly shows, however, that by the time of that question and answer, the officers had already decided to impound the car and had communicated as much to defendant, and the tow truck had already been called. Taken together with the officers'

9

testimony that the car was blocking traffic, on this record we must conclude that the officers *were* concerned about the location of the car, and defendant's assertion to the contrary is of no moment. To the extent that the officer no longer cared about the car's current position at the moment he responded to the question, this is likely because the car was about to be towed away and any "repositioning" was thus unnecessary.

Defendant next contends the prosecution "failed to establish that the officers were acting pursuant to an established departmental policy" when they decided to impound the car. Not so. Both Officer Redlich and Officer Hoffman testified that it was common departmental policy and practice to tow a car when a person is driving with a suspended driver's license, unless "articulable" reasons justify not towing a car in a particular case. As the trial court found, "their policy seems pretty clear. They tow unless there are extenuating circumstances not to tow." To the extent defendant's argument suggests the officers had to be acting pursuant to a *written* policy, that is not the law. (See *People v. Williams* (1999) 20 Cal.4th 119, 127 [holding that a written policy is not necessary with respect to the search of closed containers in an inventory search].)

The evidence here supports the conclusion that the officers' decision to impound the car was constitutionally reasonable and made pursuant to established policy. Accordingly, the inventory search conducted in connection with that decision was valid.[1]

II

*The Good Faith Exception To The Exclusionary Rule Does Not Apply To The Search Of Defendant's Cell Phone During The Inventory Search Of The Car*

In the trial court, the People acknowledged that under *Riley*, which was decided three months after the search at issue here, "police generally may not, without a warrant, search digital information on a cell phone seized from an arrested individual."

---

[1] Because the search of the car was permissible as an inventory search, we need not address defendant's argument that his consent to the search was involuntary.

10

Nevertheless, they argued that the evidence found on defendant's cell phone should not be suppressed because "Officer Redlich, in good faith, was relying on current, valid precedent" -- specifically, *Diaz* -- when he searched the cell phone without a warrant at the scene of the traffic stop. Thus, the People sought to invoke the good faith exception to the exclusionary rule. (See *Davis v. United States* (2011) 564 U.S. 229, 232 [180 L.Ed.2d 285, 290] ["searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule"].) The trial court agreed with the People.

On appeal, defendant argues (among other things) that the trial court erred in its ruling because "*Diaz* did not constitute binding appellate precedent authorizing the search of a cell phone that was found somewhere within a car, but not on the arrestee's person." According to defendant, *Diaz* authorized only the search of a cell phone that was *on the defendant's person* at the time of his arrest. Thus, in defendant's view, Officer Redlich could not have relied in good faith on *Diaz* when he conducted a warrantless search of the cell phone found in the car, rather than on defendant himself.

The People contend that defendant forfeited this argument because he did not make it in the trial court. According to the People, defendant "never challenged the applicability of . . . *Diaz* . . . to the search of . . . his cell phone on the ground that the cell phone was not on [his] person . . . ." In the People's view, because defendant did not argue in the trial court that *Diaz* applied only to searches of cell phones found on the person of an arrestee, defendant is precluded from making that argument now.

We disagree. The general rule applicable here is that "when defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. [Citation.] Defendants who do not

11

give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal." (*People v. Williams* (1999) 20 Cal.4th 119, 136.) But "[t]he determinative inquiry in all cases is whether the party opposing the motion had a fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id.* at p. 135.)

Here, it is true that defendant never specifically argued in the trial court that Officer Redlich could not have relied in good faith on *Diaz* to justify his warrantless search of the cell phone because *Diaz* authorized only the search of a cell phone found on the defendant's person at the time of his arrest. Nevertheless, we reject the People's suggestion that defendant's failure to argue this reading of *Diaz* in the trial court denied the People a fair opportunity to present evidence that might have provided some other justification for the search or ground for denying application of the exclusionary rule. The record here shows that whether the warrantless search of the cell phone was justified -- and the related question of whether the fruits of that search should be excepted from the exclusionary rule -- was directly raised and specifically briefed by both sides. Indeed, it was the prosecutor herself who first highlighted the issue when she requested a continuance to address the search of the cell phone after the officers could not recall where it was found. During the period of continuances, the prosecutor had every reason to identify *every* possible justification for the warrantless search of the phone and *every* possible basis for denying application for the exclusionary rule. What she came up with was an argument that the search was justified under *Diaz*, but nothing prevented her from coming up with other justifications as well, if there were any.

On appeal, the People contend they "were never given the opportunity to establish if the search satisfied the exception in *Arizona v. Gant* (2009) 556 U.S. 332 [173 L.Ed.2d 485] that a car and its contents may be searched if there is reason to believe that evidence of the offense [of] arrest could be found." Not so. There were only two places the cell phone could have been found -- on defendant's person or in the car. At the end of the

initial hearing, both locations were still a possibility. Thus, the prosecutor had every incentive to establish that the warrantless search of the cell phone was justified under *Gant*, as well as being authorized under *Diaz*, but she made no attempt to do so. That failure cannot be blamed on defendant because he later failed to offer a particular challenge to the prosecutor's reliance on *Diaz*.

In summary, we conclude defendant did not forfeit the argument he now raises on appeal -- which is that Officer Redlich could not have relied in good faith on *Diaz* to justify the warrantless search of the cell phone because *Diaz* governs only cell phones found on the person of an arrestee at the time of his or her arrest. And addressing that argument, we find it has merit.

The People acknowledge that in *Diaz* "the California Supreme Court held that the search-incident-to-arrest exception to the warrant requirement allowed a police officer to review data on an arrestee's cell phone *found on the person* at the time of the arrest." (Italics added.) Here, the People stipulated that the cell phone was *not* found on defendant's person, but instead was found in the car.

Defendant is correct that *Diaz* "did not constitute binding appellate precedent authorizing the search of a cell phone that was found somewhere within a car, but not on the arrestee's person." Indeed, quoting from *United States v. Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538], the court in *Diaz* explained that " 'warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from the arrest," [citation], or no exigency exists. Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.' " (*People v. Diaz*, *supra*, 51 Cal.4th at p. 92, quoting *Chadwick*, at p. 15 [53 L.Ed.2d at pp. 550-551].)

13

Here, the officers searched defendant's cell phone without a warrant during the course of the inventory search of his car, at a time when defendant was handcuffed and seated in a patrol vehicle.  Under *Chadwick*, that search could *not* be justified as a search incident to arrest.  Thus, there was no basis here to apply the good faith exception to the exclusionary rule, and the trial court erred in concluding otherwise.

III

*Remand Is Necessary*

Because the warrantless search of the cell phone was unlawful, both the direct and indirect products of that search are subject to exclusion.  (See *People v. Werner* (2012) 207 Cal.App.4th 1195, 1213.)  It is impossible for us to determine, however, just what items of evidence constitute the direct and indirect products of that search.  No testimony was elicited from the officers regarding what they saw on the cell phone during the warrantless search, although the transcript of the audio-video recording of the traffic stop shows one of the officers saying, with respect to the cell phone, that "every photo he has, it's all jerseys, all hats, it's everything he has back there."  Thus, it appears the officers saw photographs of what appeared to be counterfeit items like those found in the car.

Even assuming that is what they saw (and all they saw) on the cell phone, the record does not definitively disclose whether the existence of those photographs was used in the affidavits used to obtain the search warrants for:  (1) the apartment shared by defendant and Pruitt, where police found more counterfeit clothing, methamphetamine, a box of plastic baggies, and a digital scale; (2) the second address, where police found additional counterfeit items; and/or (3) the cell phone, where the police found text messages they believed referred to the sale of narcotics and the sale of clothing.  In agreeing to a continuance of the suppression hearing after the officers could not recall where they found the cell phone, defense counsel did represent to the trial court that "the search warrant for the cell phone included, as part of the affidavit for probable cause, the sum of the information and the data that was found, I believe, during Officer Redlich's

14

initial search of the cell phone." Absent the affidavit itself, however, we cannot verify the accuracy of this statement, nor can we determine whether and to what extent evidence obtained from the warrantless search of the cell phone was used to obtain any of the other warrants that were issued in this case. To the extent the existence of the photographs on the cell phone observed during the warrantless search *was* used in any of the affidavits used to obtain any of the warrants, the evidence obtained from the execution of those warrants would be subject to exclusion if "after excising the illegally obtained information from the affidavit, . . . there was no probable cause for the warrant's issuance." (*People v. Werner*, *supra*, 207 Cal.App.4th at p. 1213.) On the record before us, however, we cannot determine whether any of the evidence discovered pursuant to the execution of the warrants should have been excluded on this basis, because the affidavits used to obtain the search warrants are not before us. Even if they were, however, the trial court should have the opportunity in the first instance to determine what evidence, if any, is subject to suppression because of the unlawful warrantless search of the cell phone.

The People suggest defendant forfeited any right to seek suppression of evidence obtained from the execution of the warrants based on the illegality of the underlying warrantless search of the cell phone because he "did not move to traverse or quash the warrants." We disagree. "[T]o prevail on a motion to traverse an affidavit [in support of an application for a search warrant], the defendant must demonstrate (1) that the affidavit included a false statement made knowingly and intentionally, or with reckless disregard for the truth, and (2) that the allegedly false statement was necessary to the finding of probable cause." (*People v. Luera* (2001) 86 Cal.App.4th 513, 524-525.) Here, defendant did not contend that any of the officers who applied for any of the search warrants made any false statement; thus, a motion to traverse would not have been proper. Nor have the People shown that defendant was required to proceed by means of a motion to quash the warrants. On the contrary, authority supports the proposition that a defendant can move to suppress evidence that was obtained in a search conducted

pursuant to a warrant on the ground that the evidence was tainted by a prior *warrantless* search.  (See *People v. Werner*, *supra*, 207 Cal.App.4th at p. 1213; *People v. Machupa* (1994) 7 Cal.4th 614.)  That is what defendant did here.  As in *Werner*, however, because the record before us does not allow us to determine exactly what evidence should be suppressed because of the illegal warrantless search, the appropriate remedy is to remand the case to the trial court to conduct further proceedings as necessary.  Accordingly, we will remand the case to the trial court to determine what evidence, if any, is subject to suppression because of the unlawful warrantless search of the cell phone if defendant chooses to withdraw his no contest plea.

DISPOSITION

The judgment is reversed.  On remand, the trial court shall permit defendant to withdraw his no contest plea.  In the event defendant elects to withdraw his plea, the dismissed charges shall be reinstated, and the trial court shall vacate its order denying the motion to suppress, shall grant the motion to suppress any evidence that it determines is the direct or indirect product of the warrantless search of defendant's cell phone, and shall conduct such further proceedings as may be required.  In the event defendant elects not to withdraw his plea, the judgment shall be reinstated.

/s/
Robie, Acting P. J.

We concur:


/s/
Mauro, J.


/s/
Duarte, J.