Filed 10/21/20  P. v. Sedillo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL SEDILLO,<br><br>    Defendant and Appellant. | 2d Crim. No. B297757<br>(Super. Ct. No. 17CR05741)<br>(Santa Barbara County) |

After the trial court denied his motion to suppress evidence (Pen. Code,[1] § 1538.5), Samuel Sedillo pled no contest to felon in possession of a firearm (§ 29800, subd. (a)(1)), felon in possession of ammunition (§ 30305, subd. (a)(2)), possession for sale of a controlled substance (Health & Saf. Code, § 11378), and possession for sale of a controlled substance with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)).  He admitted an enhancement for a prior strike (§ 667, subds. (d)(1) & (e)(1)).

_____

[1] Unless otherwise noted, all subsequent statutory references are to the Penal Code.

The trial court sentenced him to six years in state prison.[2]

Sedillo appeals, contending the trial court should have suppressed the evidence because a protective sweep of his bedroom was not warranted, and the shotgun found in the bedroom was not in plain view. We agree and reverse.

FACTUAL AND PROCEDURAL BACKGROUND

*Testimony of Officer Hensic*

At the hearing on the motion to suppress evidence, Senior Deputy Probation Officer Heidie Hensic testified that five probation officers and six sheriff's deputies conducted a search of the residence of Sedillo's brother Alex,[3] pursuant to the search terms of Alex's postrelease community supervision (PRCS) for drug sales. At a briefing before the search, an officer provided information about the layout of the house. Detective Dennis Thomas said he wanted to contact Sedillo if he was home.

Hensic testified that officers knocked on the front door. Alex promptly answered the door. Alex initially said his brothers were home, including Sedillo. But Alex and other family members later said Sedillo was at work.

---

[2] The information also included allegations of five prior prison terms (§ 667.5, subd. (b)), but Sedillo did not admit them and the trial court did not dismiss them or take other action regarding them. (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241 [court must either impose enhancement for admitted prior or strike it]; *People v. Mendez* (1973) 35 Cal.App.3d 606, 609 [failure to impose sentence on counts or priors has effect of dismissal].)

[3] We refer to Alex by his first name to avoid confusion. No disrespect is intended.

2

*Testimony of Sergeant Morris*

Sheriff's Sergeant Jarrett Morris testified he knew Sedillo lived in the house, had a prior strike, and had a "violent past," including a conviction for section 245 (assault with a deadly weapon or by means of force likely to cause great bodily injury). At the briefing before the search, Detective Thomas said he had information from an informant that there were "drugs and possibly weapons in the home." Morris did not remember the specifics of that information, or whether it "was a reliable or unreliable informant."

There were security cameras outside the house pointed up and down the street. Morris was told Sedillo controlled the cameras from his bedroom. Morris believed the cameras could have shown the officers approaching the house.

Deputies conducted a protective sweep of the residence. Morris testified that every time deputies conduct a probation or parole search or serve a search warrant, they follow the same protective sweep routine to find everyone in the house and gather them into one area.

Sedillo's room was securely locked with a padlock on the outside of the door. The residents said none of them had a key to the padlock or knew where one was.

Morris had never been in the house before and was not familiar with it. In his experience, criminals, drug dealers and violent individuals who try to conceal themselves from law enforcement commonly barricade themselves or have family members hide them in a room. He testified "it would have been very plausible that [Sedillo] would have been able to see us coming and have somebody secure him or anybody else inside that bedroom."

3

Morris knocked on the door to Sedillo's room and called out to open the door. He did not receive a response and did not hear any noises in the room. He stood to the side of the door, then moved in front of it and kicked it open. He and a deputy conducted a protective sweep of the room. They did not find anyone inside. As they were leaving, Morris moved the door and checked behind it to ensure no one was hiding in a closet or crawl space. He saw a shotgun behind the door. Deputies then obtained a search warrant.

*Denial of motion*

The trial court denied the motion to suppress evidence. It found the protective sweep was supported by reasonable suspicion and the shotgun was in plain view.

DISCUSSION

Sedillo contends the trial court erred when it denied his motion to suppress because the evidence did not support a reasonable suspicion that a dangerous person was in the room. We agree.

In ruling on a motion to suppress, the trial court determines the credibility of witnesses, resolves factual conflicts, and weighs the evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) On review of the denial of a motion to suppress evidence, "'[w]e view the evidence in a light most favorable to the order denying the motion to suppress.'" (*Ibid.*) We defer to the trial court's express and implied factual findings that are supported by sufficient evidence. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 592.) We exercise our independent judgment in determining the reasonableness of the search. (*Ibid.*)

A warrantless search is presumed to be unreasonable, and the prosecution has the burden to justify it.

4

(*People v. Williams* (1999) 20 Cal.4th 119, 127.)  An exception exists for a search of the residence of a person on PRCS. (§§ 3453, subd. (f), 3465; *People v. Douglas* (2015) 240 Cal.App.4th 855, 857.)  A PRCS search is generally limited to those areas over which the individual has complete or joint control.  (*People v. Woods* (1999) 21 Cal.4th 668, 682 [probation search].)

*Protective sweep*

"'The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.'" (*Maryland v. Buie* (1990) 494 U.S. 325, 337 (*Buie*).)  The officer must have "a reasonable suspicion *both* that another person is in the premises *and* that that person is dangerous."  (*People v. Werner* (2012) 207 Cal.App.4th 1195, 1206 (*Werner*), italics original.)

In addition to in-home arrests, protective sweeps are authorized for other situations in which officers are inside a residence.  For example, in *People v. Ledesma* (2003) 106 Cal.App.4th 857, 864, 867 (*Ledesma*), the court upheld a protective sweep preceding a probation search, including a sweep of nonprobationers' bedrooms.  The same considerations regarding a probation search would apply to a protective sweep before a PRCS search.

The entry to Sedillo's bedroom was not justified based solely on the deputies' normal practice in conducting protective sweeps.  A protective sweep "is decidedly not 'automati[c],' but may be conducted only when justified by a reasonable, articulable

5

suspicion that the house is harboring a person posing a danger to those on the arrest scene." (*Buie*, *supra*, 494 U.S. at p. 336.) A sweep is not "*always* justified prior to a search" but must be based on reasonable suspicion. (*Ledesma, supra*, 106 Cal.App.4th at p. 864, italics original.) "'[T]he mere abstract theoretical "possibility" that someone dangerous might be inside a residence does not constitute "articulable facts"' justifying a protective sweep." (*Id*. at p. 866; *Werner*, *supra*, 207 Cal.App.4th at p. 1209.)

The theoretical possibility that family members locked Sedillo inside the room was not supported by "specific and articulable facts." Family members denied having a key. There was no response when Morris knocked, and he heard no noises coming from the room. Alex originally said Sedillo was home, but family members later said he was at work. The reasonable inference from the locked padlock on the outside of Sedillo's bedroom door was that he left the room and locked the door behind him.

Morris's experience that family members sometimes hide criminals does not by itself establish a reasonable suspicion that that occurred here. The situation here is more analogous to that in *People v. Ormonde* (2006) 143 Cal.App.4th 282. There, officers conducted a protective sweep of a house in a domestic violence case based in part on their experience that domestic violence cases were dangerous, and guns, knives and emotional persons were frequently present. (*Id*. at p. 286.) The court declined to rely on these prior incidents because to do so "would be tantamount to creating a domestic violence exception to the warrant requirement." (*Id*. at p. 295.) Similarly here, the officer's prior experience with criminals and drug dealers hiding

in a residence does not establish a reasonable belief that Sedillo was in the bedroom behind the padlocked door.

The trial judge mentioned the possibility of there being another access to the locked bedroom. But Morris did not mention this possibility, another officer had already provided information about the layout of the house, and there was no evidence any of the officers checked for another entrance. "'"No information" cannot be an articulable basis for a sweep that requires information to justify it in the first place.'" (*Ledesma, supra,* 106 Cal.App.4th at p. 866.)

Moreover, the facts do not warrant extending the protective sweep doctrine to a room locked from the outside with a padlock. Even if Morris suspected Sedillo was inside the room, the evidence does not support a reasonable suspicion he was dangerous. Morris knew Sedillo had a prior strike and "a violent past," including a prior 245. But the prior strike was for a violation of section 245 committed in 2008, eight years earlier. And as noted by the trial judge, the informant's claim that "drugs and possibly weapons were in the home" had "not been fleshed out in any way, shape or form." Morris did not even know if the informant was reliable or unreliable. An uncorroborated tip from an informant whose veracity has not been established is insufficient to establish a reasonable suspicion. (*People v. Carney* (1983) 34 Cal.3d 597, 612-613, revd. on other grounds in *California v. Carney* (1985) 471 U.S. 386 [tip not justify protective sweep]; *People v. Pitts* (2004) 117 Cal.App.4th 881, 886 [tip not justify investigative detention].)

Finally, the evidence did not show how Sedillo could have been a threat from inside the room during the period required to conduct the PRCS search. Sedillo could not leave the

room through the door because it was padlocked from the outside. And there was no evidence to support the abstract possibility that Sedillo, who Morris believed might be hiding quietly in the locked bedroom, might attempt to shoot a firearm blindly through the closed door. In sum, the evidence does not support a reasonable suspicion based on specific and articulable facts that Sedillo was in the padlocked room and posed a danger to the officers.

In response to our dissenting colleague, who accuses us of "appellate bravado," we agree (as we must) with his cited authority, *People v. Leyba* (1981) 29 Cal.3d 591, 596-597, which provides as follows:

> "In the first step the trial court must 'find the facts' relating to the challenged search or seizure: e.g., it must decide what the officer actually perceived, or knew, or believed, and what action he took in response. These are traditional questions of fact, and the statute vests the superior court with the power to decide them. . . .

> "No less important, however, is the second step of the process. As we observed in *Lawler*, 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' (*Ibid.*) Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon."

Here, there is no significant disagreement as to the facts, i.e., what the officer "perceived, or knew, or believed, and what action he took in response." The issue is whether the search was objectively reasonable based on the facts as

8

determined by the trial court.  We have a duty to determine this "question of law" independent of the trial court's decision.

And although it should not be necessary to write this (but for the dissent's hyperbolic comments), we recognize that police officers have a difficult and important job.  They are often called upon to risk their lives in service to the public.  But it is not our charge to unquestionably defer to actions which raise constitutional implications.  Rather, it is the duty of the courts to safeguard citizens against unlawful intrusions on their constitutional rights.  (*Mapp v. Ohio* (1961) 367 U.S. 643, 647.)  In fulfilling this role, we sit not in an ivory tower (as suggested by the dissent), but as a bulwark against unreasonable searches by the state.  (*California v. Acevedo* (1991) 500 U.S. 565, 586 (dis. opn. of Stevens, J.).)  As succinctly stated in *Johnson v. United States* (1948) 333 U.S. 10, 17:

> "An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion.  Any other rule would undermine 'the right of the people to be secure in their persons, houses, papers, and effects,' [footnote omitted] and would obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law."

*Plain view*

An officer who sees incriminating evidence in plain view while conducting a lawful protective sweep may lawfully seize it without a warrant.  (*Buie, supra,* 494 U.S. at p. 330; *People v. Superior Court* (*Chapman*) (2012) 204 Cal.App.4th

9

1004, 1013, 1016.) But because deputies did not lawfully enter Sedillo's room, they did not observe the shotgun from a place they had a lawful right to be. Accordingly, the plain view doctrine does not apply and the observation of the shotgun should have been suppressed. (*People v. Camacho* (2000) 23 Cal.4th 824, 831-832.)

*Search warrant*

The only evidence seized pursuant to the protective sweep was a shotgun. Deputies then obtained a search warrant and located additional guns, ammunition, and drugs. Sedillo moved to suppress the shotgun "and all of the evidence found thereafter." The motion states that the warrantless discovery of the shotgun was used to support the search warrant affidavit.

If the warrant was based on the discovery of the shotgun, the warrant would be invalid as fruit of the poisonous tree. (*People v. Machupa* (1994) 7 Cal.4th 614, 628.) But the warrant would be valid if sufficient probable cause remains after excising information obtained during the sweep. (*People v. Morton* (2003) 114 Cal.App.4th 1039, 1049.)

The prosecution relied on the search warrant in its opposition to the motion to suppress. But the search warrant affidavit was not presented at the hearing and is not included in the record on appeal. Because we do not have a complete record, the trial court shall conduct further proceedings to determine the validity of the warrant should the issue be raised on remand. (*Werner*, *supra*, 207 Cal.App.4th at p. 1213.)

DISPOSITION

The judgment is reversed. The trial court shall permit Sedillo to withdraw his no contest plea. The trial court

10

shall vacate its order denying the motion to suppress, and shall conduct further proceedings consistent with this opinion.

NOT TO BE PUBLISHED.


TANGEMAN, J.

I concur:


PERREN, J.

YEGAN, Acting P. J., Dissenting:

The majority seem very brave in the ivory tower of the court of appeal. We are far away from the dangerous streets of California. In my opinion, except in extreme cases, the last thing that appellate court justices should do is "second guess" police officers who believe that a "protective sweep" of a house is necessary for their safety and the safety of the residents. They are trying to not only enforce the criminal law, but are trying to go home at the end of the shift. We need police officers, "live ones," to see that the laws are followed. (*In re Richard G.* (2009) 173 Cal.App.4th 1252, 1255, citing *People v. Koelzer* (1963) 222 Cal.App.2d 20, 27 (*Koelzer*).) Here, the majority fault the police for conducting a "protective sweep" of a residence occupied by a person on PRCS with search terms and whose brother, appellant, is a known violent convicted felon who is not allowed to have firearms. The majority's approach to the balancing of competing rights should not be viewed with "appellate bravado." The net result of the majority opinion is a one-day license for a felon to possess a firearm.

The majority opinion places a premium on the children's game of "Hide and Seek." Only, this is not a children's game and the lives of police officers are at stake. There should be no benefit for a convicted felon to hide either himself and/or his shotgun and/or his drugs in a padlocked room as a shield to prevent peace officers from doing the job they are sworn to do. As I shall explain, the majority have retried the case on appeal. In doing so, they have impermissibly substituted their judgement on the facts for that of the trier of fact. They draw inferences away from the order here under review on almost every item of evidence. They are not allowed to do so. (See, e.g., *People v.*

1

*Leyba* (1981) 29 Cal.3d 591, 596-597.)[1]

---

[1]Appellant's brother was on PRCS with "search terms." Is there a better place to hide his own drugs than in a padlocked room? Are the police required to believe brother that this was solely the domain of appellant? And, if brother was truthful when he told police that appellant was home, and the police could not find him, isn't is reasonable to rationally suspect that appellant was hiding in the locked room?

There is no question but that an appellate court reviews questions of law de novo and if the majority would just say that as a matter of law, the police cannot forcibly enter a padlocked room not occupied by a PRCS defendant, then this appeal would present a pure question of law. But, my experience tells me that there is reweighing going on here. I will cite three instances: First, the majority opinion states that the reasonable inference is that appellant left the room and locked the door behind him. This is astonishing and it is the majority's inference, not that of the trial court. This is retrying the case on appeal. Second, the majority opinion states that appellant was not dangerous. This is astonishing and at variance with not only with the trial court's finding, it is variance with common sense. To say that a person who has been sentenced to state prison five separate times including assault with a deadly weapon, is not dangerous, does show appellate bravado. This is retrying the case on appeal. Third, the majority opinion recites there is no evidence to support the articulated belief that appellant was quietly hiding in the bedroom and might shoot blindly through the door. This is at variance with the trial court's ruling. This is the inference drawn by the majority, not by the trial court. This is retrying the case on appeal. The trial court expressly believed, and factually found "the family [told the police and probation officers] that [appellant] is in the room." This is a "clincher" easily equated with the concept of an adverse factual finding.

How am I so sure that the above findings and inferences are not that of the trial court? It would have granted the

2

Before I explain why the order denying suppression should be affirmed, I make it perfectly clear that if, for one moment, I believed that the "protective sweep" was a ruse to gain entry into appellant's room to conduct a search, I would unhesitatingly agree that the suppression motion was meritorious. But that is not what happened. The trial court credited the testimony of the police officers. It is presumed that the trial court was familiar with the charging information. It believed the police officers and on appeal, we are required to credit their testimony and the reasonable inferences to be drawn therefrom.

I quote the relevant portions of the order denying suppression. I parenthetically observe that this ruling is a textbook example of how a trial court should explain its ruling. "THE COURT: . . . So the issue in the [Pen. Code, §] 1538.5 is whether there was reasonable suspicion to support a protective sweep. . . . [¶] The facts in support of [denial of the suppression motion] are that Deputy Probation Officer Hensic testified that the probationer said his brothers are home and then specifically indicated that [appellant] was home, that the house and adjacent areas were covered by security cameras, and that the officers had information from the family that the viewing area for those cameras was inside of the locked bedroom, that the [appellant] had a prior [Pen. Code, §] 245 and prior multiple drug sale convictions, that they had received information without – and that information has not been fleshed out in any way, shape or form, but that there was information that potentially drug sales and weapons were happening in that house. The officers asked

---

suppression motion had it made the findings suggested by the majority.

3

for a key.  There was no key to be had.  [¶]  . . . But, really, the issue in this case is what . . . articulable facts and reasonable inferences support that a reasonably prudent officer would believe a person who's a potential danger was in the residence.  [¶]  Here we have, one, the particular person that the officers are concerned about is an identified person and an identified person who they believe is involved in drugs and potentially weapons who has a prior significant criminal history, and two, the reasonable articulated facts that he was in the room with the family telling them that he's in the room.  On the basis of that information, a reasonably prudent officer would have searched the room.  [¶]  The fact that there was a padlock on the outside is troubling.  It means that in order for someone to have been in there, someone either had some other access to the room or someone locked them in the room.  However, given that there's security coverage of the house available from that room, the fact that there are other explanations, the officers don't have to be right that someone was in the room, but what they simply need is a reasonable suspicion that's based on articulable facts and reasonable inferences, and in this case I'll find that the protective sweep was supported by reasonable suspicion, and particularly as the Court indicated in *People v. Ledesma* [(2003)] 106 Cal.App.4th [857,] 863, the Supreme Court 'has repeatedly held that in determining the existence of reasonable suspicion, the courts must evaluate the "totality of the circumstances" on a case-by-case basis to see whether the officer has a "particularized and objective basis" for his or her suspicion.  The court has emphasized the importance of allowing the officers on the scene "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative

4

information available to them that might well elude an untrained person,'" further, in considering the information filtered through the lens of their experience and training, 'a prudent officer will consider safety concerns triggered by the search in determining the appropriateness of first conducting a sweep, and the reviewing court must do the same.' [¶] . . . The question is was the officer in a place that he had a legal justification to be and was it in plain view. I'll find the shotgun was in plain view in a place where the officer had the right to be. On that basis, the [Pen. Code, §] 1538.5 motion is denied."

Rather than recite the facts as the majority does to justify reversal, I will recite the facts as found by the trial court and the reasonable inferences that may be drawn therefrom. Then, the objective reader will make up his or her own mind. In street parlance, appellant is a "five-time loser." In legal parlance, appellant has been sentenced to state prison on five separate occasions. His name must be a household word at the police station and they wanted to talk to appellant and his brother concerning possible illegal drug sales at the house. Why? An informant had told the police or probation officers there was drug activity at the house and that there might be firearms in the house. The police are supposed to investigate crime.

Appellant has a history of violence and has been sentenced to prison for assault with a deadly weapon. He had set up an elaborate camera system for his house including the ability to monitor who was coming down the street. Appellant's brother had "search terms" as a condition of his release on PRCS for drug sales. The police lawfully entered the residence pursuant to the "search terms." Appellant's brother initially told the police that appellant was at home. This could have been an honest mistake

5

or it could have been a clue that the brother was lying and that he had locked appellant in the room where illicit drugs and firearms were hidden.  The room was locked on the outside with a padlock.  Appellant's brother said that he did not have a key.  He told the officers to "kick the door."  The officers gave a "knock-notice."  Then, they forced entry to make sure that appellant or someone else was not hiding in the room with a firearm.  Appellant was not in the room but his illegally possessed shotgun was in the room.  The police then obtained a search warrant and seized the shotgun and drugs.  This is what they are supposed to do.

Now I ask the objective reader, given what the police knew, would a reasonable and prudent police officer "take a chance" and not perform a "protective sweep" to make sure that appellant was not lurking behind the door?  This is not far-fetched and history has shown that criminals do shoot through closed doors.  But the majority want the police to take that chance.  And, had the police not gone into the room and had appellant or someone else shot through the door, the police would be faulted for not going into the room.  As Presiding Justice Fred Pierce has said, "police officers [are entitled to protect themselves] . . . [t]his is a rule of necessity to which a right as basic as that of privacy must bow.  To rule otherwise would be inhumanely to add another hazard to an already very dangerous occupation.  Our zeal to fend off encroachments upon the right of privacy must be tempered by remembrance that ours is a government of laws to preserve which we require law enforcement officers—live ones. Without becoming a police state, we may still protect the policeman's status." (*Koelzer*, *supra*, 22

Cal.App.2d at p. 27.)  The suppression motion was properly denied.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, Acting P. J.

7

James K. Voysey, Judge

Superior Court County of Santa Barbara

_____

        Linda L. Currey, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.